The PEOPLE of the State of
Colorado, Petitioner,

v.

Larry E. BLEHM, Respondent.

The People of the State of Colorado,
Petitioner/Cross–Respondent,

v.

James E. Saint–Veltri, Respondent/Cross–
Petitioner.

No. 97SC678

Supreme Court of Colorado,
En Banc

June 28, 1999.

Rehearing Denied Aug. 9, 1999.*

* Justice SCOTT and Justice RICE do not partici-      pate.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Criminal Enforcement

Section Denver, Colorado, Attorneys for Petitioner.

Kirk Brush, Fort Collins, Colorado, Attorney for Respondent.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor Genera, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Roger G. Billotte, Assistant Attorney General, Criminal Enforcement Section, Denver, Colorado, Attorneys for Petitioner/Cross–Respondent.

David F. Vela, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender Denver, Colorado, Attorneys for Respondent/Cross–Petitioner.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari in these cases to reexamine our holding in People v. Curtis, 681 P.2d 504 (Colo.1984), in which we directed trial courts to provide, on the record, particular advisements to defendants in order to ensure that a defendant's waiver of the fundamental right to testify is knowing, voluntary, and intelligent.[1] In the instant cases, the court of appeals found that the trial courts' advisements did not satisfy the requirements of Curtis, and therefore ordered new trials for the defendants. See People v. Blehm, No. 94CA1057 (Colo.App. June 26, 1997) (not selected for official publication) ("Blehm II"); People v. Saint–Veltri, 935 P.2d 34 (Colo.App.1996).

We now reaffirm Curtis' holding that a valid waiver of the right to testify must be knowing, voluntary and intelligent. We also reaffirm Curtis' holding that the trial court must advise the defendant of the right to testify, but we modify the procedures for review of a waiver of the right to testify. In

order to best explain this modification in appellate review, we find it useful to discuss Blehm II and Saint–Veltri together. Therefore, we consolidate the cases at this time for the purpose of issuing one opinion.[2]

We apply the Curtis advisement requirement and the modified review procedure discussed herein to both cases before us. We hold that the defendant in Blehm II exercised a valid waiver of his right to testify. Accordingly, we reverse the judgment of the court of appeals in Blehm II. In Saint–Veltri, we reverse that part of the court of appeals' judgment which grants a new trial, and we remand the case for further proceedings to determine whether the defendant's waiver was effective.

The second issue on review in Saint–Veltri involves whether the district court properly denied the defendant's motion to suppress statements and evidence obtained as a result of his arrest pursuant to an invalid warrant. The court of appeals approved the district court's decision. We affirm the court of appeals' judgment as to this issue.

I.

A.

In 1986, defendant Larry E. Blehm was convicted of holding hostages during an attempt to escape from a county jail in violation of section 18–8–207, 6 C.R.S. (1998), and adjudicated a habitual criminal. He was sentenced to life in prison. His conviction and sentence were affirmed on appeal. See Blehm v. People, 817 P.2d 987 (Colo.1991); People v. Blehm, No. 86CA1351 (Colo.App. Jan. 11, 1990) (not selected for official publication).

In 1994, Blehm initiated a post-conviction proceeding, pursuant to Crim. P. 35(c), chal-

---

1. We granted certiorari on the following issue:
   Were the trial court's advisements, and the elements thereof, first identified in People v. Curtis, 681 P.2d 504 (Colo.1984), an appropriate way to ensure that these defendants' waivers of the fundamental right to testify were knowing, voluntary, and intelligent? If not, what should have been done differently and how could such proposed changes be reconciled with the principles of stare decisis?

2. With respect to Saint–Veltri, we also granted certiorari as to, and we will address, the following issue:

   Whether an arrest on an invalid warrant issued to the police due to the negligence of court personnel requires the suppression of evidence obtained during and as a result of the unlawful arrest?

lenging his conviction. Among other contentions, he asserted that he was not properly advised of his right to testify according to *Curtis*, and therefore his waiver of the right to testify was ineffective. At his 1986 trial, Blehm received multiple advisements, the most extensive of which was as follows:

Let me advise the Defendant, first, of his right to testify in the case or not to testify, whichever he prefers.

Mr. Blehm, I have previously advised you that you have the right to testify as well as the right not to testify or to remain silent. And that's your right. You may discuss this matter and should discuss this matter with your attorney and you may follow his advice. You should certainly carefully consider his advice as to whether you should or should not testify in this case. If you decide not to testify, upon your request, the Court will instruct the jury that no adverse inference is to be drawn from the fact that you did not testify in the case. I will not advise them of that unless you request me to advise them. If you decide to testify, you'll be subject to cross-examination by the District Attorney. The District Attorney may try to impeach your credibility by asking you about any prior felony convictions you may have in this or any other state, therefore you should consider this in conjunction with whether you decide to testify or not testify. In addition, I should advise you while they may cross-examine you with respect to any prior felony conviction, if any of those are also part of the charges of habitual criminal charges that are against you, that will not be substantive evidence as to the particular time that you did or did not commit those crimes, even if you must discuss them openly. In other words, the matter will be submitted to the jury, if it is appropriate on the habitual criminal charges and the prosecution still has to prove those beyond a reasonable doubt as well. Your testimony will not be used against you for that purpose.

The trial court concluded that these advisements satisfied *Curtis*, and denied Blehm's Crim P. 35(c) motion to set aside his conviction. The court of appeals found that these advisements were inadequate under *Curtis* because the defendant was not informed that (1) his prior convictions could be used *only* for impeachment purposes and (2) the jury could be instructed about this limited use of the convictions. Thus, the court of appeals reversed and ordered a new trial. *See People v. Blehm*, No. 94CA1057, slip op. at 5–6 (Colo.App. May 16, 1996) (not selected for official publication). We granted certiorari, vacated that judgment, and remanded the case to the court of appeals for reconsideration in light of *People v. Gray*, 920 P.2d 787 (Colo.1996) and *People v. Deskins*, 927 P.2d 368 (Colo.1996). *See People v. Blehm*, No. 96SC524 (Colo. Jan. 27, 1997). In *Gray* and *Deskins*, we rejected the defendant's argument that his advisement was inadequate under *Curtis* because he was not informed that a prior conviction could be used *only* for impeachment; instead, we found it sufficient to advise the defendant that a prior conviction could be used to impeach his credibility. *See Deskins*, 927 P.2d at 370–71; *Gray*, 920 P.2d at 791.

Upon reconsideration, the court of appeals again reversed and remanded for a new trial. *See Blehm II*, No. 94CA1057, slip op. at 1. The court of appeals found the trial court's advisements deficient under *Curtis*, even in light of *Gray* and *Deskins*, because the defendant was not informed that, if he chose to testify, the jury would be instructed that his previous convictions could be considered only for impeachment purposes. *See id.* at 5–6. We granted certiorari to consider whether the *Curtis* advisement requirement should be retained and, if so, whether the advisements given Blehm complied with *Curtis*.

### B.

On April 30, 1993, defendant James E. Saint–Veltri was arrested for possession of cocaine. A preliminary hearing was scheduled for July 27, 1993, in Denver County Court. Saint–Veltri failed to appear at the hearing, prompting the county court to issue a warrant for his arrest. Detective Steven Barnhill, who was to appear at the hearing pursuant to a subpoena, was advised by the deputy district attorney that the arrest warrant had been issued.

On July 28, 1993, Saint–Veltri's attorney, James Covino, contacted Saint–Veltri and arranged a meeting at the county court for the following day. On July 29, 1993, Covino met with Saint–Veltri and requested the county court to produce Saint–Veltri's file for the purpose of having the county court call up the matter. The county court could not locate the file, however, and arranged to have the matter set for the following day. Covino subsequently located the file in the Denver District Court on July 30, 1993. Covino promptly took the file to the county court, where the warrant was vacated. A county court clerk made a notation on the back of the file indicating that the warrant had been vacated. Covino then returned the file to the district court, where the warrant was destroyed.

On August 2, 1993, Detective Barnhill and Detective Patrick Fitzgibbons went to the district court to obtain a copy of the warrant. Neither detective was aware that the warrant had been vacated by the county court. A district court clerk, who was out of the office on the day the warrant was vacated, could not locate the warrant in Saint–Veltri's file and did not see the notation on the back of the file. After checking the computer files and minute orders, both of which indicated that a warrant should have been issued for Saint–Veltri's arrest, the clerk issued a new arrest warrant.

On August 3, 1993, the district court entered an order vacating the warrant. Unaware of this fact and acting pursuant to the warrant, Detective Barnhill and several officers arrested Saint–Veltri later that same day. As the police approached, Saint–Veltri ran and was seen tossing a small packet that was later retrieved and determined to hold cocaine. After he was arrested, Saint–Veltri admitted to possessing cocaine, and consented to a search of his vehicle where more cocaine was found. Saint–Veltri was charged with possession of a controlled substance and possession with intent to distribute twenty-eight grams or more of a material containing cocaine.

Saint–Veltri, asserting that he was arrested on an invalid warrant, moved to suppress the evidence and statements obtained as a result of the arrest. The district court denied his motion, concluding that, although the police relied upon an invalid arrest warrant, their actions constituted a good faith mistake pursuant to section 16–3–308, 8A C.R.S. (1986).

At his 1994 trial, the district court advised Saint–Veltri that: (1) he had a right to testify; (2) he had the right to remain silent; (3) although he should discuss the matter with his attorney, the decision whether to testify was ultimately his; and (4) if he chose not to testify, the jury could be instructed not to make any negative inferences from his decision to remain silent. In addition, Saint–Veltri was advised as follows:

[THE COURT:] If you do testify, the district attorney will be able to cross-examine you length [sic] on the events of that particular date. In addition, the district attorney will be able to cross-examine you about any prior convictions that you have. I understand that you have a prior conviction that arose in Arapahoe County in 1990.

You were convicted in this court last week, but that is not yet a final judgment, you haven't been sentenced, so you wouldn't be able – you would be able to be cross-examined about Arapahoe County, but not your conviction of last week, because that is not yet a conviction.

I am not aware of any other criminal record that you have which rises to a felony. Mr. Cooper [the prosecutor], would you wish to cross-examination with respect to any other instances?

[PROSECUTOR:] I guess the Court did not enter a judgment.

[THE COURT:] I entered a judgment of conviction, but I haven't sentenced him yet. Are you taking a position that you would be able to cross-examine about that?

[PROSECUTOR:] If the Court entered a judgment of conviction that can be used, it would be my position that I can bring up the two prior felonies. They could be used to impeach.

[THE COURT:] Without the sentencing, or a motion for a new trial, or anything else? That's what concerns me is that the

time for a motion for a new trial hasn't run out on that case.

[PROSECUTOR:] I don't know what the court specifically said after the jury verdict. My understanding is if the Court specifically says, I'm entering judgment and conviction, that it is a conviction for impeachment purposes at that point. Again, I don't know exactly what the Court did after the jury verdict. If the Court didn't specifically say that, it's not until after sentencing.

[THE COURT:] I think it's after sentencing in that case.

[PROSECUTOR:] It's just one then.

[THE COURT:] There is one Arapahoe County case? Your [sic] not aware of anything else?

[PROSECUTOR:] No.

[THE COURT:] Now, you have been represented in this case as you know by Mr. Stehlik. Have you talked to Mr. Stehlik about whether or not you're going to be testifying?

[DEFENDANT:] Yes.

[THE COURT:] Have you made any decision to testify or not to testify?

[DEFENDANT:] Yes.

[THE COURT:] What is that decision?

[DEFENDANT:] I'm not going to testify.

The jury convicted Saint–Veltri of possession of a controlled substance, but acquitted him of possession with intent to distribute. He was sentenced to eight years in prison. On appeal, the court of appeals found that the advisement given Saint–Veltri was inadequate under *Curtis* because the district court did not inform Saint–Veltri that his prior convictions could be used by the prosecution only for impeachment purposes. *See Saint–Veltri*, 935 P.2d at 36. Thus, the court of appeals reversed his conviction and remanded for a new trial. *See id.*

Because the district court's suppression ruling would be effective at the new trial, the court of appeals also addressed Saint–Veltri's contention that the district court erred in denying his motion to suppress. *See id.* The court of appeals held that the district

court's ruling was proper in light of the United States Supreme Court's holding in *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), and section 16–3–308. *See Saint–Veltri*, 935 P.2d at 38.

We initially granted certiorari to consider both the propriety of the lower courts' evidentiary ruling and whether competent evidence exists to support the conclusion that Saint–Veltri understood the consequences of testifying and voluntarily waived that right. On June 1, 1998, we issued a sua sponte order directing the parties to brief the issue of whether the *Curtis* advisement requirement is an appropriate method of ensuring that the defendant's waiver of the right to testify is voluntary, knowing and intelligent.[3]

### C.

We retain the *Curtis* advisement requirement, but we hold that a claim alleging an invalid waiver of the right to testify is best addressed in a post-conviction proceeding. We also conclude that, although a deficient *Curtis* advisement entitles the defendant to a post-conviction hearing concerning the validity of his waiver of the right to testify, a deficient trial court advisement does not invariably render his waiver invalid.

Applying this holding to *Blehm II*, we find that, because the defendant was given an adequate advisement, his waiver of the right to testify was valid. Accordingly, we reverse the court of appeals' judgment.

We conclude that the advisement given in *Saint–Veltri* was inadequate; however, we do not reverse the defendant's conviction. As explained herein, the proper response to a deficient trial court advisement is a post-conviction hearing. Accordingly, we reverse the court of appeals' grant of a new trial, and remand this case for an evidentiary hearing to determine whether Saint–Veltri's waiver of the right to testify was in fact knowing, voluntary and intelligent. If the district court determines that Saint–Veltri's waiver did not so qualify, he is entitled to a new trial.

**3.** We simultaneously granted certiorari on this issue in *Blehm II*.

Additionally, we agree with the court of appeals that the district court's suppression ruling was proper. Thus, Saint–Veltri is not entitled to a new trial on this basis. If the district court's determines that Saint–Veltri's waiver of his right to testify was invalid, the suppression ruling should control the admissibility of evidence at the new trial. In *Saint–Veltri*, therefore, we affirm the judgment of the court of appeals in part, reverse in part, and remand for further proceedings.

## II.

In order to ascertain the essential requirements of our holding in *People v. Curtis*, we first discuss that case in some detail. We then discuss briefly how the *Curtis* advisement requirement has evolved in our decisions subsequent to *Curtis*.

### A.

In *Curtis*, we explained that a defendant in a criminal case has the fundamental right to testify in his or her own defense under both the federal and state constitutions. *See* 681 P.2d at 509–10; *see also Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). We also recognized that the right to testify is sufficiently fundamental to share the procedural safeguards concerning waiver previously reserved for the right to counsel. *See Curtis*, 681 P.2d at 511; *see also Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Our conclusion that the waiver of the right to testify warrants procedural safeguards was grounded in several considerations: the special evidentiary nature of the defendant's testimony; the importance of allowing the defendant to have his or her say regardless of its effect on the chances of acquittal (thus, the authority to decide whether to testify must be allocated to the defendant rather than to the attorney); and the legitimacy that the opportunity to testify confers upon the outcome of criminal proceedings. *See Curtis*, 681 P.2d at 513–14.

■ After determining that procedural safeguards are necessary to preserve the right to testify, we discussed the consequences of this determination. First, courts should not presume acquiescence in the loss of the right to testify, and therefore should indulge every reasonable presumption against waiver. *See id.* at 514. Second, the waiver of the right to testify must be voluntary, knowing and intelligent. *See id.*[4] The fundamental fairness of a criminal trial is called into question if this right is relinquished in any other way. *See id.* at 511. In order for a defendant to exercise a voluntary, knowing and intelligent waiver, she must be aware that she has a right to testify, she must know of the consequences of testifying, and she must be cognizant that she may testify notwithstanding the contrary advice of counsel. *See id.*

The "'serious and weighty responsibility'" of determining whether the accused has executed a voluntary, knowing and intelligent waiver falls upon the trial court. *Id.* (quoting *Johnson*, 304 U.S. at 465, 58 S.Ct. 1019). To this end, a trial court "exercising appropriate concern for the constitutional right to testify" should advise the defendant on the record and outside the jury's presence:

that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he

---

**4.** In discussing the standard for a valid waiver of a fundamental right, we have used the terms "intentionally" and "intelligently" interchangeably. *See People v. Mozee*, 723 P.2d 117, 121 n. 4 (Colo.1986). As we explained in *Mozee*, the use of these different terms does not indicate different standards for a valid waiver. *See id.* In all cases, the "waiver must be made 'intentionally' and 'intelligently' that is, the person waiving that right must be fully aware of what he is doing and must make a conscious, informed choice to relinquish the known right." *Id.*

does not testify then the jury can be instructed about that right.

*Curtis,* 681 P.2d at 514–15 (footnote omitted).

We explained that the purposes of these advisements are (1) to ensure that waiver of a fundamental constitutional right is intelligent and knowing, (2) to preclude post-conviction disputes between defendant and counsel over the issue, and (3) to facilitate appellate review. *See id.* at 515. "By placing the elements of intelligent and competent waiver on the record at the time of trial," we held, "the trial court can accurately determine whether waiver was indeed intelligent and competent, and that determination will be readily available on appeal." *Id.* at 516.

Although we declined to give our decision in *Curtis* retroactive effect, *see id.,* we declared that the prospective consequence of our holding was that "the trial court has a duty to question the defendant on the record to ascertain whether waiver of the right to testify is made with a complete understanding of his rights." *Id.* at 516.

### B.

Our cases subsequent to *Curtis* have addressed two issues: (1) the precise requirements of the trial court advisement concerning the right to testify, and (2) the procedure for reviewing a claim of an invalid waiver of the right to testify in light of the trial court's advisement. We will discuss each issue in turn.

### 1.

■ We have held that, although the trial court advisement need not conform to any prescribed litany or formula, "the advisement given must include the *Curtis* elements and avoid misleading a defendant about the consequences of a decision not to testify." *People v. Chavez,* 853 P.2d 1149, 1152 (Colo. 1993); *accord People v. Milton,* 864 P.2d 1097, 1100 (Colo.1993); *see also People v. Gray,* 920 P.2d 787, 793 (Colo.1996) (affirm-

ing *Curtis* advisement requirement). We have explained that the trial court must discuss both the right to testify and the consequences of exercising that right. *See, e.g., Milton,* 864 P.2d at 1099; *Chavez,* 853 P.2d at 1151; *Roelker v. People,* 804 P.2d 1336, 1338 (Colo.1991).[5]

■ Regarding the right to testify, the trial court must advise the defendant that he possesses this right and that the right is a personal one such that only the defendant may choose whether to exercise it. *See, e.g., People v. Deskins,* 927 P.2d 368, 370 (Colo. 1996); *Gray,* 920 P.2d at 791; *Chavez,* 853 P.2d at 1151–52. On the consequences of testifying, the advisement must include three concepts: if he testifies, the prosecution will be allowed to cross-examine him; if he has a felony conviction, the prosecution may ask him about it and thereby disclose it to the jury; and the felony conviction can be used for the purpose of impeaching his credibility. *See Deskins,* 927 P.2d at 370–71; *Gray,* 920 P.2d at 791–92. Hence, a proper advisement regarding the right to testify contains five essential concepts.

### 2.

In *Curtis* and its progeny, we presented a procedure for review of a defendant's claim of ineffective waiver of the right to testify. We found that the trial court advisement requirement, by placing the elements of valid waiver on the record, ensured that the defendant's claim would be best addressed on direct appeal. The purpose of placing the elements of intelligent and competent waiver on the record was "to eliminate speculation as to what a particular defendant might believe to be the salient consequences of testifying and to provide accurate information concerning those consequences." *Milton,* 864 P.2d at 1101. Thus, the advisement requirement enabled the trial court's determination as to the validity of the waiver, and the basis for that determination, to be "readily available on appeal." *Curtis,* 681 P.2d at 516.

---

**5.** With respect to the right to remain silent, the trial court should advise the defendant that he possesses this right, and that if he does not testify the jury can be instructed about this right. In all of the cases dealing with *Curtis* discussed above, the defendant did not waive his right to remain silent; thus, the adequacy of these advisements was not at issue.

On direct appeal, the appellate court could assess the validity of the waiver based on a review of the record alone (i.e., without an evidentiary hearing on the issue). Thus, there would be no need for "further proceedings to determine what a defendant may have believed to be the consequences of exercising the fundamental due process right to testify in his own behalf." *Milton,* 864 P.2d at 1101. Accordingly, the *Curtis* advisement requirement was designed "to preclude post-conviction disputes between defendant and counsel over the issue, and to facilitate appellate review." *Curtis,* 681 P.2d at 515; *see also Gray,* 920 P.2d at 793; *Milton,* 864 P.2d at 1100–01.

Consistent with the above purposes, the *Curtis* advisement requirement envisioned that a defendant alleging an ineffective waiver of the right to testify must raise this issue on direct appeal. Because of the suitability of direct appellate review, a defendant would not be entitled to post-conviction relief on the narrow issue of a denial of the right to testify. Such a claim would have been addressed on direct appeal, or else waived by the defendant. Under this framework, post-conviction evidentiary hearings were no longer to be a tool for assessing the validity of a defendant's waiver of the right to testify. *See Gray,* 920 P.2d at 793; *Curtis,* 681 P.2d at 516.

Thus, the *Curtis* advisement requirement treated the record on appeal as the sole basis for determining whether the defendant's waiver was voluntary, knowing and intelligent. Consequently, in cases where the trial court's on-the-record advisement has been deficient in some important way, we have necessarily concluded that the defendant's waiver was invalid. *See Milton,* 864 P.2d at 1101 ("absent an adequate advisement any purported waiver of that right by the defendant does 'not demonstrate a knowing and intelligent waiver of his right to testify'") (quoting *Chavez,* 853 P.2d at 1153). We have held, therefore, that the "[f]ailure to give a proper *Curtis* advisement ... constitutes reversible error." *Gray,* 920 P.2d at 790; *see also Milton,* 864 P.2d at 1101; *Chavez,* 853 P.2d at 1153. Consistent with the theory behind the advisement requirement, we have

also rejected the suggestion that a defendant must prove he was prejudiced by an inadequate advisement in order to prevail. *See Milton,* 864 P.2d at 1101; *Chavez,* 853 P.2d at 1153.

With this understanding of our case law, we now turn to the question whether we should abandon or modify any aspect of the *Curtis* advisement requirement.

### III.

Any discussion of whether or not to modify our precedent must address the principles of stare decisis. Hence, we will discuss the certiorari issues before us with due regard for these principles.

### A.

■ The doctrine of stare decisis provides that a court will follow the rule of law it has established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come from departing from precedent. *See* John Hanna, *The Role of Precedent in Judicial Decision,* 2 Vill. L.Rev. 367, 368 (1957).

The principles of stare decisis have long been the rule in Colorado. *See, e.g., In the Matter of the Title, Ballot Title and Submission Clause, and Summary for 1999–2000 # 29,* 972 P.2d 257, 262 (Colo.1999); *Smith v. District Court,* 907 P.2d 611, 612 (Colo.1995); *In re Marriage of Olar,* 747 P.2d 676, 679 (Colo.1987); *People v. Banta,* 189 Colo. 474, 479, 542 P.2d 377, 381 (1975); *People v. Quimby,* 152 Colo. 231, 235, 381 P.2d 275, 277 (1963); *Wolf v. People,* 117 Colo. 279, 282, 187 P.2d 926, 927 (1947). We have explained that stare decisis "should be adhered to in the absence of sound reason for rejecting it." *Smith,* 907 P.2d at 612.

■■ Of course, stare decisis is not an inflexible or immutable rule:

The rule of stare decisis is not a doctrine of mortmain; it does not exclude room for growth in the law and the courts are not without power to depart from a prior ruling, or to overrule it, where sound reasons

exist and where the general interests will suffer less by such departure than from a strict adherence.

*Creacy v. Industrial Commission,* 148 Colo. 429, 433, 366 P.2d 384, 386 (1961). Therefore, consistent with the principles of stare decisis, we will depart from our precedent where sound reasons exist for doing so.

### B.

In the instant cases, the prosecution urges us to abandon or materially alter the *Curtis* advisement requirement. According to the principles of stare decisis, we will approve this departure from our precedent only if we find sound justification for so doing. We find no such justification for abandoning the advisement requirement altogether, but we do see important reasons for adjusting appellate review of that requirement.

Although there is some overlap, the prosecution essentially presents three reasons to overrule *Curtis* and its progeny. First, several other jurisdictions have declined, either explicitly or implicitly, to adopt a *Curtis*-style advisement requirement. Second, the advisement requirement intrudes upon the relationship between the defendant and defense counsel, and affords the trial court improper influence over the decision to testify. Third, the *Curtis* advisement requirement does not facilitate appellate review or prevent all post-conviction claims concerning the right to testify; thus, the requirement fails to serve its alleged purposes.

### 1.

■ With respect to the prosecution's first argument, we first note that it is well-settled that the right to testify is constitutionally protected. The right to testify emanates from the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination. *See Rock v. Arkansas,* 483 U.S. 44, 49–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Gray,* 920 P.2d at 790. For reasons discussed at length in *Curtis* and in Part II.A of this opinion, we have imposed procedural safeguards to preserve the constitutional right to testify. *See Curtis,* 681 P.2d at 513–

15. Among these safeguards is the *Curtis* advisement requirement.

We are aware that many jurisdictions have adopted different procedures to address a defendant's waiver of the right to testify. *See, e.g., Underwood v. Clark,* 939 F.2d 473, 475–76 (7th Cir.1991) (and cases discussed therein). Some courts not only decline to require a trial court advisement of the right to testify, but insist that the defendant have protested defense counsel's actions (in declining to place the defendant on the stand) directly to the trial court, else the defendant's silence is treated as an effective waiver of the right to testify. *See United States v. McMeans,* 927 F.2d 162, 163 (4th Cir. 1991); *United States v. Martinez,* 883 F.2d 750, 760–61 (9th Cir.1989). Other courts have imposed a requirement, similar to that adopted in *Curtis,* that the trial court advise the defendant on the record of her right to testify. *See, e.g., Hurn v. State,* 872 P.2d 189 (Alaska App.1994) (citing *LaVigne v. State,* 812 P.2d 217 (Alaska 1991)); *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293 (1995); *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988).

Still other courts have elected to "steer a middle course." *Underwood,* 939 F.2d at 476. These courts, while recognizing the constitutional nature of the right to testify, do not require an advisement by the trial court on the record. *See, e.g., id.; Siciliano v. Vose,* 834 F.2d 29, 30 (1st Cir.1987); *Phillips v. State,* 105 Nev. 631, 782 P.2d 381, 382 (1989); *State v. Savage,* 120 N.J. 594, 577 A.2d 455, 471 (1990). Instead, these courts direct their attention to post-conviction proceedings. Thus, although the defendant need not protest at trial and the judge need not question him, the defendant may assert that his waiver of the right to testify was not effective through particularized allegations in a collateral attack on the conviction. *See, e.g., Underwood,* 939 F.2d at 476.

The above information does not provide compelling justification to overturn our precedent. The fact that other jurisdictions have adopted different procedures from those we have used to protect the right to testify demonstrates only that courts have

differed as to which of the aforementioned approaches best protects the underlying constitutional right.[6] We concluded in *Curtis* that, because the right to testify is so fundamental, the procedural safeguards described in *Curtis* are necessary to preserve that right. The crucial question of whether we should now alter our view of the nature of the right to testify, in light of our decisions affirming *Curtis*, is left to be addressed by the prosecution's remaining contentions.

### 2.

The prosecution's second argument against the *Curtis* advisement requirement concerns its effect upon the relationship between the defendant and her counsel. It is asserted that the trial court advisement hinders or usurps the role of defense counsel in advising the defendant whether to take the stand. That is, by explaining to the defendant that the decision whether to testify is a personal one, the trial court may inappropriately influence the defendant to waive her converse right not to testify. *See Siciliano*, 834 F.2d at 30.

We addressed this precise argument in *Curtis* itself. We expressed confidence that both trial courts and defense counsel will conduct themselves in such a manner as to avoid any problem of undue judicial influence:

> It has been suggested that advisement by the court "is subject to abuse in interpretation and may provoke substantial judicial participation that could frustrate a thoughtfully considered decision by the defendant and counsel who are designing trial strategy," but we believe that the trial court generally will advise the defendant of his rights properly, as indeed we believe most defense counsel do.

*Curtis*, 681 P.2d at 515 n. 13 (citations omitted). We note further that nothing in *Curtis* or its progeny relieves defense counsel of the obligation to provide constitutionally effective assistance to the defendant. Moreover, the Rules of Professional Conduct adopted by

this court require a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Colo. RPC 1.4(b); *see also* Colo. RPC 1.2(a) ("In a criminal case, the lawyer shall abide by the client's decision after consultation with the lawyer, as to ... whether the client will testify.").

The prosecution presents no evidence that the confidence in trial courts and counsel we expressed in *Curtis* was misplaced. Our previous resolution of this question, therefore, demands deference. *See* William Blackstone, *Commentaries* *70 ("we owe such deference to former times as not to suppose that they acted wholly without consideration"). Thus, "[a]lthough we recognize that there is respectable authority to the contrary, we prefer not to depart from the doctrine of stare decisis" as to the rule laid down by *Curtis* a decade and a half ago. *Jennings v. Bradfield*, 169 Colo. 146, 147–48, 454 P.2d 81, 81–82 (1969) (citations omitted).

### 3.

As a third justification for overruling *Curtis*, the prosecution asserts that the advisement requirement does not serve its purported purpose of facilitating appellate review and preventing post-conviction disputes. Here, we agree in part: the *Curtis* advisement requirement has not served this purpose as effectively as intended. We do not believe, however, that this fact warrants the wholesale abandonment of the requirement. Rather, we believe a modification of appellate review of the requirement is sufficient to implement the original aims of *Curtis*.

To reiterate, *Curtis* sought to ensure that the defendant's waiver of the right was voluntary, knowing and intelligent by advising him on the record of the elements necessary to make a valid waiver. *See* discussion *supra* Part II.B.1. *Curtis* also intended to eliminate post-conviction disputes as to the validity of the waiver by confining review of the waiver

---

**6.** We find it noteworthy that, even among those jurisdictions that have declined to require a trial court advisement, some courts have recognized that such an advisement is the preferred method

of preserving the fundamental right to testify. *See Culberson v. State*, 412 So.2d 1184, 1186–87 (Miss.1982); *Phillips*, 782 P.2d at 382.

to the record on direct appeal. *See* discussion *supra* Part II.B.2. Experience has demonstrated, however, that while the *Curtis* advisement requirement may have facilitated appellate review, it has not eliminated post-conviction disputes. This is true primarily for two reasons: (1) appellate courts have often allowed post-conviction claims alleging an invalid waiver of the right to testify even where the defendant did not raise the issue on direct appeal; and (2) appellate courts have been uncomfortable with finding that the defendant's waiver is invalid from the sole fact of a defective trial court advisement, especially in cases where it appears likely that the defendant knew of the elements of a valid waiver.

The first point is illustrated by one of the cases before us. In *Blehm II*, the defendant did not assert on direct appeal that his waiver of the right to testify was ineffective. Under the *Curtis* framework, therefore, he waived this claim. Yet, both the trial court and the court of appeals entertained his post-conviction claim because the prosecution did not present the argument that Blehm had waived his claim to the trial court below. *See Blehm II*, No. 94CA1057, slip op. at 1–2. Under the circumstances of this case, we do not disagree with the lower courts' decisions to allow Blehm to proceed with his claim. We note, however, that Blehm is one of several Colorado defendants who have been allowed to challenge a waiver of the right to testify in post-conviction proceedings — contrary to the process envisioned by *Curtis*. *See, e.g., People v. Rivera*, 964 P.2d 561, 563 (Colo.App.1998); *People v. Muniz*, 928 P.2d 1352, 1354–55 (Colo.App.1996).

An explanation of the second point is found within our decision in *Gray*. In that case, we upheld the defendant's conviction because the trial court's advisement contained all of the *Curtis* elements. *See Gray*, 920 P.2d at 789.[7] In determining that the advisement was adequate, however, we considered the facts that "[p]rior to the trial court's advisement, the defendant's attorney informed the trial court that he had already counseled his client concerning his right to testify .... [and] [d]efendant acknowledged being so informed and advised by his attorney." *Id.* at 791. Thus, we indicated that an off-the-record advisement concerning the right to testify may be relevant to the validity of the defendant's waiver. Under the appellate review process envisioned by *Curtis*, however, an off-the-record advisement given the defendant cannot be considered in determining the validity of his waiver. Hence, appellate courts are denied information that may be quite relevant to the issue before them.

The shortcomings of the *Curtis* review process are further illustrated by the facts of *Saint–Veltri*. *See* discussion *supra* Part I.B. In this case, the district court directly advised the defendant of the first four *Curtis* elements, but failed to directly advise him of the fifth element (the impeachment consequence of testifying). *See Saint–Veltri*, 935 P.2d at 36; *see also* discussion *supra* Part II.B.1. However, the district court did discuss the impeachment purpose of the defendant's prior convictions with the prosecutor, presumably in the presence of the defendant. Thus, the facts of this case beg resolution of the question whether the defendant heard and understood the discussion occurring directly before him. Moreover, the record shows that Saint–Veltri was convicted of different charges before the same trial judge only a week earlier. Hence, the advisement in this case took on the appearance of a continuing conversation between the judge and the defendant. This presents the question whether, in light of an advisement given in the earlier case and in light of the colloquy between the court and the prosecutor that took place in the defendant's presence in this case, the defendant fully understood the consequences of testifying.

Under the *Curtis* framework of appellate review, however, we have no mechanism to answer these questions. *Curtis'* limitation of review to direct appeal has excluded fact-finding hearings in precisely those cases where facts outside the record may be crucial to understanding whether the defendant

---

7. The trial court did not advise the defendant that, if he exercised his right to remain silent, the jury could be instructed about this right. However, the absence of this advisement was not specifically addressed in *Gray*.

knowingly and intelligently waived his right to testify (i.e., in those cases where the trial court advisement is deficient in some way).[8]

Accordingly, we believe sound reason exists to modify the review afforded to a defendant's claim of invalid waiver of the right to testify. These claims are best addressed in post-convictions proceedings where an evidentiary hearing is available if necessary to ascertain facts not present in the original trial record. We emphasize that trial courts must continue to advise defendants according to the requirements of *Curtis* and its progeny. We reaffirm the five essential elements of the trial court advisement as discussed in Part II.B.1 of this opinion. *See also* discussion *infra* Part IV. However, defendants need not and should not raise allegations of an invalid waiver on direct appeal of a conviction. Instead, such claims may be raised only in a post-conviction motion. Where the trial court's on-the-record advisement includes the five essential *Curtis* elements, the record conclusively demonstrates that the defendant made a valid waiver of the right to testify. Thus, if the trial court determines that the advisement was adequate, the defendant is not entitled to an evidentiary hearing on the issue of the validity of his waiver.

Where the trial court's advisement fails to include all five essential *Curtis* elements, a defendant who alleges in a post-conviction motion that his waiver was invalid is entitled to an evidentiary hearing to determine whether his waiver of the right to testify was in fact voluntary, knowing and intelligent. In the post-conviction hearing, the parties may present any evidence which, in the discretion of the trial court, is relevant to that determination. Consistent with the fundamental right explained in *Curtis*, the post-conviction inquiry should focus upon whether the defendant was aware that he had a right to testify, whether the defendant knew of the consequences of testifying, and whether the defendant understood that he could testify notwithstanding the contrary advice of counsel. *See Curtis*, 681 P.2d at 511. If, after the post-conviction hearing, the trial court concludes that the defendant's waiver was not voluntary, knowing and intelligent, the defendant is entitled to a new trial.[9]

This modification of the procedures for reviewing a claim of ineffective waiver of the right to testify applies only to defendants who have not presently exhausted their direct appeals. With respect to such a defendant who has raised a claim of invalid waiver in his direct appeal, the appellate court should determine the sufficiency of the trial court advisement. If the appellate court concludes that the advisement is deficient, the appellate court should remand the case for an evidentiary hearing in which the trial court determines the validity of the defendant's waiver of the right to testify. As to a defendant whose direct appeal has been exhausted as of the date of this opinion, any claim of ineffective waiver of the right to testify was waived if it was not raised on direct appeal in accordance with the preexisting *Curtis* framework. *See* discussion *supra* Part II.B.2. Hence, in no circumstance is such a defendant entitled to a post-conviction hearing on the narrow issue of denial of the right to testify.[10]

---

8. Of course, where the trial court advisement is complete, a review of the record suffices to determine that the defendant made a fully informed, and therefore valid, waiver.

9. Like all questions of fact, the trial court's factual findings underlying its determination of the validity of the waiver would be reviewable for clear error. *See Valdez v. People*, 966 P.2d 587, 590 (Colo.1998). The trial court's ultimate conclusion as to the validity of the waiver would be a question of law, and thus would be reviewable de novo. *See id.*

10. The defendant may, of course, bring an ineffective assistance of counsel claim through particularized allegations in a post-conviction motion, even where the claim is based in part upon the denial of the right to testify. *See People v. Thomas*, 867 P.2d 880, 887–88 (Colo.1994). To prevail on such a claim, however, the defendant must satisfy the two-prong test adopted by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed by this court in *People v. Cole*, 775 P.2d 551 (Colo.1989). *See Davis v. People*, 871 P.2d 769, 772 (Colo.1994). It bears repeating that "[w]e neither hold nor imply that every person filing a Crim. P. 35(c) motion to set aside a judgment of conviction on the ground of ineffective assistance of counsel is entitled to an evidentiary hearing." *Thomas*, 867 P.2d at 886 n. 13.

## IV.

Before applying the above analysis to the cases before us, we find it useful to reiterate the requirements of the trial court advisement. As discussed in Part II.B.1 of this opinion, a proper trial court advisement regarding the right to testify contains five essential concepts. To aid in understanding our frequently repeated explanation that *Curtis* specifies required elements of an advisement, but does not prescribe a litany or formula, we contrast the essential elements, or concepts, with the language from *Curtis* (in parenthesis) which is not a required litany:

### The right to testify

(1) the right *exists* —

("that he has a right to testify");

(2) it is a *personal* right —

("that if he wants to testify then no one can prevent him from doing so");

### The consequences of testifying

(3) the defendant will be subject to *cross-examination* —

("that if he testifies the prosecution will be allowed to cross-examine him");

(4) felony convictions may be *disclosed* —

("that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury");

(5) the convictions may be used to *impeach credibility* —

("that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon credibility").

In our cases applying *Curtis,* we have not required the trial court to invoke the precise language used in *Curtis* or its progeny to describe each element. Rather, we have found the advisement sufficient where the defendant is informed of each of the five concepts or elements. *See Deskins,* 927 P.2d at 370–71; *Gray,* 920 P.2d at 789–91.

We now turn to the resolution of the cases before us.

## A.

We note again that defendant Blehm has exhausted his direct appeal. Hence, we normally would not entertain his post-conviction motion alleging an ineffective waiver of the right to testify. However, because we granted certiorari and ordered briefing in this case to reexamine our *Curtis* case law, we decline to dismiss his claim. Instead, in this unique case, we will apply to his claim both the *Curtis* advisement requirement that we have reaffirmed today and the modification of the review process explained in this opinion.

Blehm maintains that the advisement he was given by the trial court at his 1986 trial did not conform to the requirements of *Curtis* and its progeny. *See* discussion *supra* Part I.A. Blehm asserts that the trial court's failure to inform him that the jury may be instructed to consider his prior convictions for the limited purpose of impeachment rendered the advisement inadequate. The court of appeals agreed. *See Blehm II,* No. 94CA1057, slip op. at 5–6. We do not agree.

There is no dispute that Blehm was advised of the first four *Curtis* elements. He was advised that: (1) he has a right to testify; (2) the decision whether or not to testify is a personal one such that no one may force him or forbid him to take the stand; (3) if he testifies, the prosecution will be allowed to cross-examine him; and (4) if he has a felony conviction, the prosecution may ask him about it and thereby disclose it to the jury. This case concerns whether Blehm was adequately advised of the fifth element (the impeachment consequence of testifying).

After reconsidering its earlier decision in light of *Gray* and *Deskins,* the court of appeals concluded that *Curtis* requires a defendant to be advised of two separate aspects of the impeachment consequence of testifying: (1) that the conviction may be used to impeach credibility and (2) that the jury may be so instructed. *See Blehm II,* No. 94CA1057, slip op. at 5–6. Because Blehm was not informed that the jury could be so instructed, the court of appeals again held that the advisement was inadequate. As outlined

above, however, there exists only one required element where the court of appeals found two. Although the defendant must be advised that the felony convictions may be used to impeach his credibility, the defendant need not be informed of the process by which the fact-finder may learn of this limited use of the convictions (e.g., through a jury instruction if the fact-finder is a jury). Thus, although it is better practice to advise the defendant "that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility," *Curtis*, 681 P.2d at 514, the concept that the conviction may be used to impeach credibility is all that is required to be communicated to the defendant.

For example, in *Gray*, the defendant was not told that the jury could be instructed about the use of his felony convictions. *See* 920 P.2d at 789. In *Deskins*, although the defendant was so informed, we specifically approved the language of the advisement given in *Gray*, noting that it was not distinguishable from that given in *Deskins*. *See Deskins*, 927 P.2d at 370–71. Accordingly, because Blehm was advised that his convictions may be used to impeach his credibility, the advisement given him contained all of the elements of a proper *Curtis* advisement.

So long as the defendant is advised of each *Curtis* element, the defendant's waiver of the right to testify is voluntary, knowing and intelligent. Therefore, Blehm is not entitled to either an evidentiary hearing or a new trial.

### B.

With respect to defendant Saint–Veltri, we first note that his case is part of the direct appeal of his conviction. Hence, the modification of the review process described in this opinion applies to his case.

■■■ As indicated in Part III.B.3 above, the district court in *Saint–Veltri* did not directly advise the defendant that his prior conviction could be used by the prosecution to impeach his credibility. *See also* discussion *supra* Part I.B. That is, the district court failed to inform the defendant of the fifth requisite element of the *Curtis* advise-

ment. Thus, we agree with the court of appeals that the advisement given Saint–Veltri was inadequate. *See Saint–Veltri*, 935 P.2d at 36.

■■■ According to the modified review process, the defendant is not automatically entitled to a new trial. Thus, we reverse the court of appeals' judgment as to this issue. Instead, Saint–Veltri is entitled to a post-conviction hearing to determine whether his waiver of the right to testify was in fact knowing, voluntary and intelligent. If the district court concludes that the defendant's waiver was not valid, he is entitled to a new trial. In accordance with the modified review process explained herein, we remand his case for the requisite evidentiary hearing.

### V.

The second issue on review in *Saint–Veltri* concerns whether the exclusionary rule requires suppression of evidence seized incident to an arrest resulting from an invalid arrest warrant. We conclude that, under the facts of this case, the evidence need not be suppressed.

### A.

■■■ The exclusionary rule is a " 'judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " *People v. Altman*, 960 P.2d 1164, 1167 (Colo. 1998) (quoting *United States v. Leon*, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The question " 'whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' " *Arizona v. Evans*, 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Where the exclusionary rule would not result in "appreciable deterrence, then, clearly, its use . . . is unwarranted." *United States v. Janis*, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

Applying these principles to the context of a police search in which the officers acted in objectively reasonable reliance on a search warrant that later was determined to be invalid, the U.S. Supreme Court recognized a "good faith" exception to the exclusionary rule in *United States v. Leon. See* 468 U.S. at 905, 104 S.Ct. 3405. The Court based its conclusion on three considerations: (1) the exclusionary rule was historically designed to deter police misconduct rather than to punish the errors of judges and magistrates; (2) there was no evidence suggesting that judges and magistrates are inclined to subvert the Fourth Amendment or that lawlessness among these actors requires the application of the sanction of exclusion; and (3) there was no basis for believing that exclusion of evidence seized pursuant to a warrant would have a significant deterrent effect on the issuing judge or magistrate. *See Evans,* 514 U.S. at 11, 115 S.Ct. 1185 (analyzing *Leon* ); *Illinois v. Krull,* 480 U.S. 340, 348, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (same).

▆▆ We have adopted the *Leon* good faith exception to the exclusionary rule for purposes of both federal and state constitutional analysis. *See, e.g., Altman,* 960 P.2d at 1168–69. We have also found that the *Leon* standard and the statutory good faith exception codified in section 16–3–308 [11] are " 'substantially similar.' " *Id.* at 1169 (quoting *People v. Leftwich,* 869 P.2d 1260, 1272 (Colo.1994)). Under either test, the inquiry is whether it was objectively reasonable for the officer to rely upon the warrant. If a reasonable officer would not have relied upon the warrant, "then objective good faith is absent and the good faith exception offers no shelter." *Altman,* 960 P.2d at 1169.

▆▆ We have recognized that the good faith exception found in section 16–3–308 may apply to a search incident to arrest

where the arrest is later found to be unlawful. *See People v. Fields,* 785 P.2d 611, 613–14 (Colo.1990); *People v. Mitchell,* 678 P.2d 990, 995 (Colo.1984). The U.S. Supreme Court has held that the *Leon* good faith exception may apply to the same scenario. *See Evans,* 514 U.S. at 15, 115 S.Ct. 1185. Thus, it is well-settled that the good faith exception to the exclusionary rule may apply to a search incident to the execution of an invalid arrest warrant. We now turn to the question whether the good faith exception applies to the particular facts of this case.

## B.

▆▆ The district court found that "it's clear that as between the county court and district court there were errors," and that "there was no valid warrant in effect at the time the arrest was issued." Neither party disputes these facts. The district court also found that "there were no errors by the police officer whatsoever [and] the detectives were the absolute innocent victims" of the courts' errors. Considering all the circumstances surrounding the police conduct in this case, the district court concluded that "there was no – absolutely no mistake of conduct on the part of the police, that the police were relying upon a good faith mistake." Accordingly, the district court denied Saint–Veltri's suppression motion, and the court of appeals agreed with this decision. We also agree.

Because the standard for a good faith mistake found in section 16–3–308 is substantially similar to the standard recognized in *Leon,* we naturally look to federal precedent for guidance on the issue of whether the good faith exception should apply in a particular context. In *Evans,* the Supreme Court considered a situation very similar to facts before us here. In that case, the defendant

---

**11.** Section 16–3–308 provides in pertinent part:
(1) Evidence which is otherwise admissible in a criminal proceeding shall not be suppressed by the trial court if the court determines that the evidence was seized by a peace officer ... as a result of a good faith mistake or of a technical violation.
(2) As used in subsection (1) of this section:
  (a) "Good faith mistake" means a reasonable judgmental error concerning the existence of

facts or law which if true would be sufficient to constitute probable cause.
  . . . .
(4)(b) It shall be prima facie evidence that the conduct of the peace officer was performed in the reasonable good faith belief that it was proper if there is a showing that the evidence was obtained pursuant to and within the scope of a warrant ...

was arrested pursuant to a warrant that had been quashed seventeen days prior to this arrest. *See Evans,* 514 U.S. at 4–6, 115 S.Ct. 1185. As a result of an inaccurate computer record, the police did not know the warrant had been quashed at the time they executed the warrant. *See id.* The defendant argued that marijuana seized incident to the arrest should be suppressed as the fruit of an unlawful arrest. Applying the *"Leon* framework," the Court disagreed, and held that the good faith exception to the exclusionary rule applied to these facts. *Evans,* 514 U.S. at 16, 115 S.Ct. 1185.

■■■ The Court explained that (1) the exclusionary rule was designed as a means of deterring police misconduct, not mistakes by court employees; (2) there was no evidence that court employees are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors required application of the extreme sanction of exclusion; and (3) there was no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. *See id.* at 14–15, 115 S.Ct. 1185. Hence, where there is no indication that the arresting officer was not acting objectively reasonably when he or she relied upon the arrest warrant, "[a]pplication of the *Leon* framework supports a categorical exception to the exclusionary rule for clerical errors of court employees." *Id.* at 16, 115 S.Ct. 1185.

In two pre-*Evans* cases, we considered whether section 16–3–308 prevents the exclusion of evidence obtained as result of a search incident to unlawful arrest. In *People v. Fields,* Denver police made a warrantless arrest of the defendant after reading inaccurate information entered by a Denver police officer into the National Crime Information Computer System. *See* 785 P.2d at 612. The erroneous information indicated that an arrest warrant had been issued for the defendant for parole violations. Given that the parole board had never issued a warrant for the defendant's arrest, it was not clear why the police officer entered this inaccurate information into the computer. It was clear, however, that no member of the police department had any authority to arrest the defendant for a parole violation. *See id.* at 613. We held that the arrest of the defendant did not qualify as a "good faith mistake" under section 16–3–308. *See* id. at 614. Thus, evidence obtained during the search incident to the unlawful arrest was properly suppressed. *See id.*

We see no reason to reconsider our holding in *Fields.* The categorical exclusion for clerical errors of court employees announced in *Evans* does not include the type of unexplained police error present in *Fields.* Thus, *Evans* has no effect upon our decision in *Fields.* Because *Fields* dealt with police error, however, that case does not address the facts of the instant case in which court error resulted in the improper arrest of Saint–Veltri.

In *People v. Mitchell,* the defendant was arrested pursuant to a warrant for the failure to pay a traffic fine. *See* 678 P.2d at 991. Because the defendant had actually paid the traffic fine prior to the issuance of the warrant, the warrant had been issued in error. *See id.* We concluded that the improper arrest did not constitute a "good faith mistake" under section 16—3–308; therefore, we affirmed the order suppressing evidence obtained as a result of the arrest. *See id.* at 995. In *Mitchell,* at no point did valid grounds exist for the issuance of an arrest warrant. This fact distinguishes *Mitchell* from *Evans,* where a valid warrant existed at one time but was quashed prior to the defendant's arrest. We need not decide, however, whether the exception to the exclusionary rule announced in *Evans* would apply to the facts of *Mitchell.* It suffices to determine whether the exception described in *Evans* applies to the facts of the case before us. We conclude that the exception does apply.

Before July 30, 1993, a valid warrant existed for Saint–Veltri's arrest. As a result of clerical errors by court employees, the fact that the warrant had been vacated was not communicated to the police. There is no indication that the police were objectively unreasonable in relying upon the warrant. Hence, this case is indistinguishable from *Evans.* We hold therefore that the evidence obtained as result of Saint–Veltri's arrest

falls into the exception to the exclusionary rule explained in *Evans*. The district court properly denied Saint–Veltri's motion to suppress.

Consequently, if, after the post-conviction evidentiary hearing on the validity of the Saint–Veltri's waiver of the right to testify, the district court concludes that he is entitled to a new trial, the suppression ruling should control the admissibility of evidence at that new trial.

### VI.

We reaffirm our holding in *People v. Curtis* that a valid waiver of the right to testify must be knowing, voluntary and intelligent. We also adhere to the advisement requirement announced in *Curtis* and its progeny. We modify, however, the review process applicable to allegations of an invalid waiver of the right to testify. Such claims may be addressed only in post-conviction proceedings in accordance with the procedures explained herein.

We conclude that the advisement given Blehm satisfied the advisement requirement; thus, we reverse the judgment of the court of appeals in *Blehm II*. We also hold that, although the advisement given Saint–Veltri was inadequate, he is not automatically entitled to a new trial. Instead, he is entitled to an evidentiary hearing concerning the validity of his waiver of the right to testify. Therefore, we reverse the judgment of the court of appeals in *Saint–Veltri,* and remand for further proceedings consistent with this opinion.

Justice RICE does not participate .