In re John A. DENSLOW, Debtor.

CENTRAL FIDELITY BANK, Plaintiff,

v.

John A. DENSLOW, Defendant.

Bankruptcy No. 88–01480–AB.
Civ. A. No. 89–0431–A.
Adv. No. 88–0661–AB.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 15, 1989.

Douglas D. Callaway, Richmond, Va., for Central Fidelity Bank.

Mark Tosti, Falls Church, Va., for John A. Denslow.

## MEMORANDUM OPINION

ELLIS, District Judge.

### INTRODUCTION

In this bankruptcy appeal, the sole issue presented concerns the admissibility of four documents reflecting computer-stored automatic teller machine (ATM) transactions. The bankruptcy court admitted the documents as business records under Rule 803(6), Fed.R.Evid. The debtor, John A. Denslow, appeals this ruling, arguing that the documents do not qualify for the business records exception (1) because they were not made or transmitted by "a person with knowledge," as required by Rule 803(6), (2) because they are untrustworthy and (3) because the proper custodian did not testify in support of their admission. For the reasons set forth here,[1] the debtors' arguments are without merit and the judgment of the Bankruptcy Court is affirmed.

### FACTS

Plaintiff, Central Fidelity Bank (the "Bank"), is a creditor with respect to two credit card accounts, one VISA and one Mastercard, issued to the debtor, defendant Denslow. In the spring of 1988, Denslow was employed as a Department of Defense management analyst. His take home pay at the time was $1,989 per month. Yet, Denslow apparently maintained 25 credit card accounts and had accumulated, by that time, approximately $79,630 in unsecured debt. Losses from a June 30, 1988 weekend gambling spree in Atlantic City added approximately $16,000 to this figure. Following his return, Denslow consulted with counsel and on July 28, 1988, after receiving a call from a casino concerning

---

**1.** The Court issued its ruling and the essential reasons for it from the bench immediately following oral argument. This Memorandum Opinion expands on and amplifies the reasons given from the bench.

his gambling debt, Denslow filed a Chapter 7 Petition.[2]

As a creditor, the Bank investigated the circumstances of the petition. The investigation disclosed a series of cash withdrawals through ATM machines all occurring within 20 days of the bankruptcy petition filing. At the Section 341 meeting,[3] the Bank questioned Denslow on the cash withdrawals and he apparently admitted to making them. Thereafter, the Bank filed an adversary proceeding against Denslow, requesting that his credit card debts to the Bank be declared non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(C).[4]

At trial, Denslow denied making the ATM cash withdrawals. The Bank disputed this, arguing, *inter alia*, that all of the debt incurred during the presumptive 20 day period, $3,800, should be declared non-dischargeable. In support of this argument, the Bank offered in evidence four exhibits, copies of Denslow's computer-prepared VISA and Mastercard statements for the period May—July, 1988.[5] These exhibits reflect a series of $100-$200 ATM withdrawals during the pertinent period totaling $2800. They also reflect a single, additional $1000 withdrawal within the 20 day period. Two witnesses testified in support of the admissibility of these exhibits as business records under Rule 803(6), Fed.R. Evid. First, Henry Ferry ("Ferry"), a nine year Bank employee testified that his duties in the Bank's credit card division included reviewing the Bank's credit card accounts of customers in bankruptcy to check for potential fraud. In this connec-

tion, he was the custodian of the documents reflecting the credit card accounts of any Bank customers who declared bankruptcy, including Denslow. These records, he testified, were stored on microfilm by the Bank and were essentially identical to the monthly statements sent to the customer. Finally, Ferry testified that records in question reflected a series of withdrawals totalling $3,800 within the 20 day period prior to the bankruptcy filing.

Additional testimony on the disputed records was offered by Donna Saccardi ("Saccardi"), the Bank's bank card officer. Her job was to function as an operations analyst in connection with ATM's and ATM transactions. As such, she was familiar with the mechanical aspects of processing credit card ATM transactions. She described in some detail the process by which an ATM cash withdrawal transaction is made and recorded by the computer. In essence a customer begins the process by inserting a bank card into the ATM. Next, the ATM video screen will instruct the customer to enter his personal identification number ("PIN") via the ATM keyboard. To prevent anyone other than the customer from transacting business using the customer's card, each customer is issued a unique number. Once the PIN is entered, the screen asks the customer what type of transaction is desired. The customer, at this point, can elect to make a withdrawal by pressing the appropriate key. Thereafter, the customer is given the opportunity to enter the amount to be withdrawn and to verify this amount. The ATM com-

**2.** *See* 11 U.S.C. § 301.

**3.** *See* 11 U.S.C. § 341 (requirement for meeting of creditors and equity security holders).

**4.** In pertinent part, those provisions state as follows:

A discharge ... does not discharge an individual debtor from any debt ... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, false representation, or actual fraud ... (C) ... cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor

on or within twenty days before the order for relief under this title, are presumed to be nondischargeable....

**5.** The four exhibits in question are:
(1) Exhibit 5—Mastercard Statement dated June 9, 1988 for (Denslow's) account No. 5416–4930–0100–8535.
(2) Exhibit 6—Mastercard Statement dated July 9, 1988 for (Denslow's) account No. 5416–4930–0100–8535.
(3) Exhibit 7—Mastercard Statement dated August 9, 1988 for (Denslow's) account No. 5416–4930–0100–8535.
(4) Exhibit 8—VISA Statement dated August 9, 1988 for (Denslow's) account No. 4060–6130–0101–2102.

puter then makes several account inquiries, including whether a block has been placed on the account and whether the account maximum has been reached. If there are no conditions preventing disbursement, the money is dispensed. The record of the transaction is maintained within the computer memory, called the "log file." Saccardi also testified that she personally verified that the exhibits accurately reflected the transactions stored in the ATM log file memory.

Based on the testimony of Ferry and Saccardi, the Bankruptcy Court, over the debtor's objection, admitted the exhibits as Rule 803(6) business records.[6] Given the facts disclosed in the exhibits and the other evidence in the case, the court found $3,800 of the credit card debt to be nondischargeable. This appeal followed.

6. In pertinent part, Rule 803(6) provides that:
 *The following are not excluded by the hearsay rule ... (6) ... A memorandum, report, record, or data compilation, in any form of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or method or circumstance of preparation indicate lack of trustworthiness.*

7. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a). Unlike the limited review accorded findings of fact, questions of law, as here, are freely and independently reviewable on appeal. *See Lowes of Virginia, Inc. v. Thomas*, 60 B.R. 418 (1986); *United States v. Barlows, Inc.*, 53 B.R. 986 (1984), *aff'd*, 767 F.2d 1098 (4th Cir.1985).

8. *See, e.g., United States v. Linn*, 880 F.2d 209 (9th Cir.1989) (computer generated telephone toll logs admissible); *United States v. Hayes*, 861 F.2d 1225 (10th Cir.1988) (IRS computer records admissible); *United States v. Bonallo*, 858 F.2d 1427 (9th Cir.1988) (computer summary of automatic teller machine transactions admissible); *United States v. Catabran*, 836 F.2d 453 (9th Cir.1988) (computer records compiled by bankrupt's bookkeeper at bankrupt's direction admissible); *United States v. Puente*, 826 F.2d 1415 (5th Cir.1987) (computer records recording entry times of vehicles into the United States admissible); *United States v. Hutson*, 821

### ANALYSIS [7]

Decisions are legion admitting computer records as Rule 803(6) business records.[8] That such records, including the exhibits in issue, may be admissible under Rule 803(6) cannot seriously be doubted. The question is whether the testimony offered to support their admission satisfies Rule 803(6)'s requirements. The crux of Denslow's appeal is that the testimony of Ferry and Saccardi in this case does not make the grade. First, Denslow claims that neither Berry nor Saccardi are "a person with knowledge" as required by the Rule. This argument is without merit; it misconstrues the Rule's requirements. The party advocating admissibility is not required to produce the "person with knowledge" who made the record. The legislative history of the Rule [9] and the

F.2d 1015 (5th Cir.1987) (computer records admissible if requirements of evidentiary rule governing data compilation are met); *United States v. Croft*, 750 F.2d 1354 (7th Cir.1984) (payroll computer records admissible); *United States v. Sanders*, 749 F.2d 195 (5th Cir.1984) (computer print out generated by key punch operator as transcribed from another source admissible); *City of Phoenix v. Com/Systems, Inc.*, 706 F.2d 1033 (9th Cir.1983) (computer summary of data compilation admissible); *United States v. Scholle*, 553 F.2d 1109 (8th Cir.1977) (computer print out of drug analysis admissible).

9. The Report of the Senate Committee on the Judiciary on this exception states, in pertinent part, as follows:
 *It is the understanding of the committee that the use of the phrase "person with knowledge" is not intended to imply that the party seeking to introduce the memorandum, report, record, or data compilation must be able to produce, or even identify, the specific individual upon whose first-hand knowledge the memorandum, report, record, or data compilation was based. A sufficient foundation for the introduction of such evidence will be laid if the party seeking to introduce the evidence is able to show that it was the regular practice of the activity to base such memorandums, reports, records, or data compilations upon a transmission from a person with knowledge, e.g. in the case of the content of a shipment of goods, upon a report from the company's receiving agent or in the case of a computer printout, upon a report from the company's computer programmer or one who has knowledge of the particular record system. In short, the scope of the phrase "person with*

decisions construing it [10] makes this unmistakably clear. Instead, the Rule requires only the testimony of a qualified person, usually the custodian, that the record was made by a person with knowledge at or near the time of the incident recorded and that it is the Bank's regular practice to maintain and rely upon such records in the course of its business. Additional testimony supporting reliability may be required if "the circumstances of [the document's] preparation" are alleged to reflect a lack of trustworthiness. In the case at bar, the Bank's evidence amply met the Rules's requirements. Ferry's testimony, combined with Saccardi's, established that the information contained in the disputed exhibits was contemporaneously recorded by the computer itself and then kept in the computer memory and relied on in the regular course of business. No more is required for admissibility. *United States v. Bonallo*, 858 F.2d 1427 (9th Cir.1988) (ATM computer records are properly admissible as business records so long as they comply with the requirements of Rule 803(6)).

Courts have reached the same result in the closely analogous situation of computer generated telephone toll logs. *See United States v. Linn*, 880 F.2d 209 (9th Cir.1989); *United States v. Miller*, 771 F.2d 1219 (9th Cir.1985). Computer generated telephone logs are produced in essentially the same way as ATM records. In both, an out of court "statement" is entered by the declarant directly into a computer memory. Documents reflecting the out of court "statements" may be printed from the computer's memory. And both the records and the memory, as here, may be maintained and relied upon in the ordinary course of business. In this instance, any doubts about the trustworthiness of the printout are dispelled by Saccardi's testimony that she verified the accuracy of the printout against the ATM computer memory log.

Finally, there is no merit to Denslow's claim that Ferry is not qualified to testify as a custodian because he was not the original custodian. Pursuant to his duties as a reviewer of bankrupt customer records, he did not become the custodian until after Denslow filed for bankruptcy. Nothing in the language or rationale of Rule 803(6) makes admissibility turn on the testimony of the original custodian. The current custodian's testimony, as here, is sufficient. *Bobbie Brooks, Inc. v. Hyatt*, 195 Neb. 596, 239 N.W.2d 782 (1976) (witness deemed competent to identify business record and testify to method of preparation although not custodian at the time of the record's compilation); *Rossomanno v. Laclede Cab Co.*, 328 S.W.2d 677 (Mo.1959) (doctor's medical records admissible on basis of testimony by a witness who was not custodian at records' making). Nor is it required that the testifying custodian qualify as one who participated in the preparation of the record. *See Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145 (7th Cir.1989) (custodian not required to have participated in procedure which produced records); *Itel Capital Corp. v. Cups Coal*

knowledge" is meant to be coterminous with the custodian of the evidence or other qualified witness. The committee believes this represents the desired rule in light of the complex nature of modern business organizations. Reprinted in D. Green & C. Nesson, *Federal Rules of Evidence with Selected Legislative History and New Cases and Problems,* 167–68 (1984) (emphasis added).

**10.** For decisions on this point, see *United States v. Franco,* 874 F.2d 1136 (7th Cir.1989) ("qualified witness" only requires that person understand the system of record keeping used); *United States v. Zapata,* 871 F.2d 616 (7th Cir.1989) (sufficient foundation laid so long as witness can in some way verify information offered); *United States v. Iredia,* 866 F.2d 114 (5th Cir. 1989) (predicate for admissibility may be satisfied by custodian or one who can explain

record-keeping system and demonstrate adherence to it); *United States v. Dominguez,* 835 F.2d 694 (7th Cir.1987) (witness need only have knowledge of procedure which generated document and of its maintenance); *United States v. Hutson,* 821 F.2d 1015 (5th Cir.1987) (admissibility not premised on requirement that person laying foundation is able to testify personally to accuracy of records); *United States v. Kail,* 804 F.2d 441 (8th Cir.1986) (testimony that receptionist saw custodian mark ledger was sufficient to admit evidence of brokers commissions); *United States v. Hathaway,* 798 F.2d 902 (6th Cir.1986) (FBI agent provided foundation for admission of company records); *United States v. Draiman,* 784 F.2d 248 (7th Cir.1986) (testimony of accountant who was not an employee of company whose records were at issue provided sufficient foundation for admissibility).

*Co., Inc.,* 707 F.2d 1253 (11th Cir.1983) (person who prepared records need not testify so long as trustworthiness can be otherwise established); *United States v. Chappell,* 698 F.2d 308 (7th Cir.1983) (testimony of former employees of defendant's company provided sufficient foundation for admissibility). .

In sum, Denslow's objection to the admissibility of the ATM records fail. The bankruptcy court, based on Ferry's and Saccardi's testimony, correctly admitted the exhibits under Rule 803(6). It was still open to Denslow to deny, as he did at trial, that he made the "statements" to the ATM, *i.e.,* that the withdrawals were not made not by him, but by some person making unauthorized use of his PIN. This claim, however, goes to the weight of the exhibits, or to what they mean, not to their admissibility. *See United States v. Hathaway,* 798 F.2d 902 (6th Cir.1986); *United States v. McLean–Davis,* 785 F.2d 1534 (11th Cir.1986) (disparity between opposing parties' exhibits of telex communication goes to the weight, not the admissibility, of the document); *United States v. Huber,* 772 F.2d 585 (9th Cir.1985); *United States v. Panza,* 750 F.2d 1141 (2d Cir.1984); *Matador Drilling Co., Inc. v. Post,* 662 F.2d 1190 (5th Cir.1981) (contention that insurance company's reports are inaccurate or incomplete go to the weight, not the admissibility, of the evidence); *Meder v. Everest & Jennings, Inc.,* 637 F.2d 1182 (8th Cir. 1981); *Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 605 F.2d 1228 (2d Cir.1979); *International Wood Processors v. Power Dry, Inc.,* 593 F.Supp. 710 (D.S.C.1984).

 At oral argument, the Court noted the possible application of Rule 803(24) to these facts. The point merits clarification. Rule 803(24), the hearsay "catch all" exception, applies only in those novel or unusual circumstances where no other exception applies. Its purpose is to provide a vehicle for the growth of the law in areas unforeseen by the Rule's drafters in enumerating the other 23 exceptions. . *See*

*Universal Elec. Co. v. United States Fidelity & Guar. Co.,* 792 F.2d 1310 (5th Cir.1986); *United States v. Simmons,* 773 F.2d 1455 (4th Cir.1985). This "catch all" exception does not apply where a document fits under a conventional exception, but is excluded simply because there is a failure of proof. For example, a document offered as a business record is not eligible for Rule 803(24) treatment simply because the record's proponent fails to produce a qualified person to establish the predicates for admissibility. Instead, the "catch all" provision may apply only where the circumstances presented do not fall within Rule 803(6) or another exception. *Clifton v. Gusto Records, Inc.,* 852 F.2d 1287 (6th Cir.1988) (unpublished opinion); *United States v. McCall,* 740 F.2d 1331 (4th Cir. 1984). In this instance, the ATM records in issue fall within Rule 803(6). There is, therefore, no occasion here for the application of Rule 803(24).

The Court notes, however, that if this conclusion is later held to be erroneous and the exhibits found not to fit within Rule 803(6), then the question of the applicability of Rule 803(24) may arise. The Rule's trustworthiness requirement seems plainly met. More problematical is whether the notice requirement is met. It is uncontested that the Bank never gave Denslow notice that it would attempt to rely on Rule 803(24). One Fourth Circuit opinion suggests that such notice must be given. *United States v. Mandel,* 591 F.2d 1347 (4th Cir.1979)[11]. *See also, United States v. Ruffin,* 575 F.2d 346 (2d Cir.1978) (requirements of Rule 803(24) must be strictly construed and they mandate that notice be given of intention to rely on exception 24). Decisions from other jurisdictions suggest otherwise. *See e.g., United States v. Atkins,* 618 F.2d 366 (5th Cir.1980) (Rule 803(24) requires that the opposing party be given notice of the evidence to be introduced); *United States v. Oates,* 560 F.2d 45 (2d Cir.1977) (Rule 803(24) requires advance notice of intention to offer hearsay statements). There appears to be no pub-

---

**11.** In *Mandel,* however, the notice requirement issue was not squarely presented; it appears in dicta where the court paraphrases the requirements of Rule 803(24).

lished decision in which this precise question has been squarely presented and decided. In any event, there is no occasion here for the application of Rule 803(24) because the exhibits in issue fit well within another exception.

Because the exhibits were properly admitted under Rule 803(6), this appeal is denied and the bankruptcy court's ruling is affirmed. An appropriate order has issued.