UNITED STATES of America

v.

Maria BACAS, Defendant.

Violation Nos. 1516466, 2117788.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 15, 2009.

M. HANNAH LAUCK, United States Magistrate Judge.

This matter came before the Court for trial on August 31, 2009. Defendant is charged with traveling 62 miles per hour in a 45 mile per hour zone on April 3, 2009 (Violation No. 2117788).[1] At trial, the United States moved to admit into evidence certificates verifying the accuracy of the tuning forks used to calibrate the radar that detected Defendant's speed. Two certificates were certified, two uncertified. For the following reasons, the Court holds that the certified certificates constitute admissible evidence to prove the reliability of the tuning forks used to calibrate the radar device. The uncertified certificates constitute inadmissible evidence.

### I. Findings of Fact

On April 3, 2009, Officer Michaels of the Fort Lee Military Police was conducting moving radar operations at Route 36 East and Jackson Circle on Fort Lee, Virginia, a place within the special territorial jurisdiction of the United States. He observed a silver 2008 Chevrolet traveling east on Route 36 at a high rate of speed. He verified the vehicle's speed by radar as 62 miles per hour in a 45 mile per hour zone. He conducted a traffic stop and identified Maria Bacas as the driver. Officer Michaels issued Bacas a citation for speeding.

Officer Michaels testified that he verified the accuracy of the radar equipment in his patrol vehicle both before and after his shift. To do so, he tapped the 35 mile per hour tuning fork and the 65 mile per hour tuning fork, whose serial numbers correspond to the radar equipment in his patrol vehicle, against a hard object, and then held them in front of the radar anten-

---

1. At trial, the United States moved to dismiss Violation No. 1516466, and the Court dismissed it.

na on his patrol car. Officer Michaels testified that the tuning forks showed that the radar equipment accurately operated based on the 35 miles per hour and 65 miles per hour tests.

## II. Issues Presented

This Court must determine whether the Supreme Court's recent decision in *Melendez–Diaz v. Massachusetts*, — U.S. —, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), bars, in the absence of live testimony from the technicians who performed the test, admission of the United States's proffered certificates of accuracy for the tuning forks used to confirm the proper operation of the radar device that measured the speed of Defendant's vehicle. The Court must also determine the admissibility of uncertified copies of the proffered tuning fork certificates.

## III. Analysis

**A. Certificates Verifying the Accuracy of the Tuning Forks Used to Confirm the Proper Operation of the Radar Device Do Not Contravene the Confrontation Clause.**

■ In *Melendez–Diaz*, the Supreme Court held that "certificates of analysis" prepared by Massachusetts lab analysts as to seized substances, reporting that the substances contained cocaine and stating its quantity, were testimonial in nature and implicated the defendant's Sixth Amendment[2] right to confront witnesses against him. 129 S.Ct. at 2531–32. The Court found that these certificates of analysis fell within what it called the " 'core class of testimonial statements' " covered by the Confrontation Clause. *Id.* at 2532 (*quoting Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). Because the certificates sought to prove facts before the court and because they were prepared for use in trial, the Court found that, under *Crawford*, the certificates "were testimonial statements and the analysts were 'witnesses' for purposes of the Sixth Amendment." *Id.* The Court ruled that, absent a showing of unavailability of the analyst to testify at trial *and* a showing that the defendant had a prior opportunity to cross-examine the analyst, Melendez–Diaz had a right to be confronted with the analyst's testimony during trial. *Id.* The Supreme Court reversed the underlying decision admitting into evidence the certificates of analysis in lieu of live testimony and remanded the case to the Massachusetts court for further proceedings.

The case before this Court presents a different type of certificate. Here, the United States offers Exhibits 1 through 4 to confirm the proper calibration of two tuning forks used to test the accuracy of a radar detection unit utilized by officers in the field.[3] Officer Michaels testified live,

**2.** "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.

**3.** Exhibit 1 is a "Tuning Fork Certification of Accuracy" from Virginia Communications Traffic Safety Radar, Inc. It is signed and notarized by Jane M. Heymack. It certifies that on May 19, 2009, the tuning fork bearing serial number 27787 had been tested and found to oscillate at 2541 Hz at 23.3 degrees Celsius, and when used with a Kustom Signals traffic radar operating at 24.150 Ghz, will cause a calibration signal of 35 miles per

hour. The back of the certificate bears a signed statement by Sgt. Henry Johnson, Jr., which reads, "I certify that this is a true and accurate copy of the original document maintain [sic] in the normal course of business at the Provost Marshal's Office, Fort Lee, Virginia."

Exhibit 2 is a "Tuning Fork Certification of Accuracy" from Virginia Communications Traffic Safety Radar, Inc., signed and notarized by Ms. Heymack. It certifies that on May 19, 2009, the tuning fork bearing serial number 26464 had been tested and found to oscillate at 4727 Hz at 23.3 degrees Celsius,

subject to cross examination, that he had used the tuning forks to test the radar unit. The person who calibrated the tuning forks did not appear in court.

This Court holds that Exhibits 1 through 4 offer non-testimonial evidence falling outside the confines of the Confrontation Clause. This holding flows from *Melendez–Diaz* itself. The *Melendez–Diaz* decision anticipates that not all lab certificates are testimonial in nature, including those that speak to routine testing of the accuracy of the laboratory machines. In *Melendez–Diaz*, the Court noted that:

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, *or accuracy of the testing device*, must appear in person as part of the prosecution's case.... Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.

*Id.* at 2532 n. 1 (emphasis added). In *Melendez–Diaz*, the Supreme Court did not hold that the prosecution must produce a witness to state that the lab equipment used to test a substance operated accurately on the day that cocaine was tested. Instead, the Court ruled that a certificate speaking to a fact supporting an element of the offense (that a substance was co-

caine of a certain quantity) mirrored an affidavit and required live testimony subject to cross examination. *Id.*; *see also United States v. Forstell*, 656 F.Supp.2d 578, 579–82 (E.D.Va.2009); *Larkin v. Yates*, No. CV 09–2034–DSF, 2009 WL 2049991, n. 2 (C.D.Cal. July 9, 2009).

It is clear to this Court that a certificate of analysis offered to establish an element of an offense, like that in *Melendez–Diaz*, far more readily constitutes testimony "against" a defendant than does the ilk of routine testing information contained in the United States's proffered exhibits. *See Forstell*, 656 F.Supp.2d at 581 ("Certificates regarding such routine information [confirming that accuracy and maintenance tests were performed on the radar device and tuning fork] fit squarely into the category of nontestimonial records carved out by the Supreme Court. Thus, the government is not required to make available at trial the technicians who performed the tests in order for the certificates to be admissible."). Here, Defendant did not challenge the viability of radar technology. Defendant instead sought live testimony about the test applied to the radar equipment to show that it performed correctly. *Cf. Grant v. Commonwealth*, 54 Va.App. 714, 682 S.E.2d 84, 88–89 (2009) (holding that the attestation clause in a certificate memorializing the results of a blood test

---

and when used with a Kustom Signals traffic radar operating at 24.150 Ghz, will cause a calibration signal of 65 miles per hour. The back of the certificate contains the same statement of certification by Sgt. Johnson as Exhibit 1.

Exhibit 3 is a "Tuning Fork Certification of Accuracy" from Virginia Communications Traffic Safety Radar, Inc., signed and notarized by Ms. Heymack. It certifies that on November 18, 2008, the tuning fork bearing serial number 27787 had been tested and found to oscillate at 2542 Hz at 22.3 degrees Celsius, and when used with a Kustom Signals traffic radar operating at 24.150 Ghz,

will cause a calibration signal of 35 miles per hour.

Exhibit 4 is a "Tuning Fork Certification of Accuracy" from Virginia Communications Traffic Safety Radar, Inc., signed and notarized by Ms. Heymack. It certifies that on November 18, 2008, the tuning fork bearing serial number 26464 had been tested and found to oscillate at 4728 Hz at 23.3 degrees Celsius, and when used with a Kustom Signals traffic radar operating at 24.150 Ghz, will cause a calibration signal of 65 miles per hour. Although both Exhibits 3 and 4 bear Ms. Heymack's notarization, they lack Sgt. Johnson's certification.

was testimonial in nature where the attestation clause affirmed, as required by statute, that a trained technician accurately performed the test, and where the certificate reported the test results in lieu of live testimony).

■ The Sixth Amendment "has always had certain well-recognized exceptions." *Dowdell v. United States*, 221 U.S. 325, 330, 31 S.Ct. 590, 55 L.Ed. 753 (1911). Collateral facts that do not speak to a defendant's guilt or innocence have been excepted from Sixth Amendment protection. *See id.* (finding that certificates sent by the trial court to the appellate court, certifying that the defendants had entered not guilty pleas and had been present at trial, did not violate the Confrontation Clause). Neutral statements that relate only to the operation of a machine constitute such collateral facts. *See Luginbyhl v. Commonwealth*, 46 Va.App. 460, 618 S.E.2d 347, 355 (2005) (holding that the statements contained in a breath test certificate indicating that the machine is in working order are not testimonial within the meaning of the Sixth Amendment);[4] *see also* H.B. 5007, 2009 Gen. Assem., 2009 Spec. Sess. I (Va.2009) (responding to *Melendez–Diaz* by removing from the statute the requirement that breath-test machines be tested for accuracy every six months in order for the results to be admissible evidence in DUI cases).

Unlike the certificates at issue in *Melendez–Diaz*, in the instant case, Exhibits 1 through 4 propound neutral information relating only to the proper operation of the radar equipment. Such calibration results do not pertain to any particular defendant or specific case. *Bohsancurt v. Eisenberg*, 212 Ariz. 182, 129 P.3d 471, 478–80 (Az.Ct. App.2006). Officer Michaels testified that a technician responsible for testing the accuracy of the tuning forks used by the Military Police does so every six months, in May and November. The technician generates a certificate of accuracy at the time of testing, regardless of that certificate's potential later use in a criminal prosecution against a specific defendant. The evidence shows that the tuning forks are not tested in relation to a particular traffic stop. Moreover, technicians calibrating testing machines do not know which records, if any, will be used in litigation.[5] *Id.* at 479. Certificates of routine testing lack the essential "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution" that would render them "testimonial." *Davis*, 547 U.S. at 822, 126 S.Ct. 2266.

In sum, Exhibits 1 through 4 certify that routine testing has been completed on

---

4. *Luginbyhl* also held admissible the results of the breath test via certificate. That aspect of *Luginbyhl* does not pertain to the case at bar.

5. *Compare United States v. Washington*, 498 F.3d 225, 232 (4th Cir.2007), *cert. denied*, —— U.S. ——, 129 S.Ct. 2856, 174 L.Ed.2d 600 (2009) (noting that "the machine [used to test defendant's blood for alcohol and PCP] could tell no difference between blood analyzed for health-care purposes and blood analyzed for law enforcement purposes—the output could not be 'testimonial.' " (quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006))).

*Washington* was decided prior to the Supreme Court's decision in *Melendez–Diaz*, and certiorari was denied shortly after the *Melendez–Diaz* decision. 498 F.3d 225 (4th Cir. 2007), *cert. denied*, —— U.S. ——, 129 S.Ct. 2856, 174 L.Ed.2d 600 (2009). Though the United States suggests in its July 28, 2009 brief that the *Washington* Court rejected the idea that persons verifying the accuracy of the equipment are subject to the Confrontation Clause, *Washington* rests on the holding that, when an expert witness testifies as to it, the output of a *machine* is not a testimonial hearsay statement, and therefore does not violate the Confrontation Clause. *Id.* at 232.

the tuning forks, and such certification is completed without regard to a particular defendant. This Court finds that the certificates constitute admissible evidence because they lack the primary purpose of proving past events potentially relevant to later criminal prosecution against a particular defendant.

### B. Uncertified Copies of Tuning Fork Certificates Are Inadmissible Evidence to Verify the Accuracy of the Tuning Forks Used to Confirm the Proper Operation of the Radar Device.

■ Certificates verifying the accuracy of equipment or its regular maintenance may be non-testimonial, but they must still meet all requirements of the Federal Rules of Evidence to be admitted. Although they are nearly identical to Exhibits 1 and 2, Exhibits 3 and 4 fail to meet the requirements of Rule 803(6) of the Federal Rules of Evidence because the custodian of the records did not certify them or introduce them via live testimony, and the United States failed to introduce them through the testimony of an "otherwise qualified witness." Therefore, Exhibits 3 and 4 constitute inadmissible hearsay evidence.

Rule 803(6) [6] of the Federal Rules of Evidence excepts from the hearsay rule records kept in the course of a regularly conducted business activity, if it is within the regular practice of that business activity to keep such records. Fed.R.Evid. 803(6). To lay the foundation for the admissibility of such evidence, the records' proponent must establish that the records: (1) were made contemporaneously with the act; (2) by a person with knowledge; (3) in the regular course of business; and, (4) that it was the regular practice of the business to keep such records. Id.

■ Either "the custodian or other qualified witness" may lay the foundation for the records' admission.[7] Id.; see United States v. Sofidiya, 1998 WL 743597, at *3 (4th Cir. Oct. 23, 1998). In the instant case, Officer Michaels testified that Sgt. Johnson, the custodian of the records, certified Exhibits 1 and 2 as accurate copies of the certificates verifying the accuracy of the tuning forks tested and kept in the regular course of business. Exhibits 3 and 4, proffered by the United States to show the accuracy of the tuning forks in November of 2008, differ from Exhibits 1 and 2 because they lack certification. See n. 3. Because they lack certification, and because the custodian of the records did not testify at trial, Exhibits 3 and 4 therefore must be introduced through the testimony of an "otherwise qualified witness."

■ Officer Michaels's testimony fails to establish him as an "otherwise qualified witness" under Rule 803(6). Courts inter-

---

6. Fed.R.Evid. 803 states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness....
(6) Records of Regularly Conducted Activity.—A memorandum, report, record, or data compilation, ... made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compila-

tion, all as shown by the testimony of the custodian or other qualified witness....
Fed.R.Evid. 803(6).

7. In the absence of live testimony, Rule 902(11) acts as "the functional equivalent of testimony offered to authenticate a business record tendered under Rule 803(6)," permitting a declaration by the records' custodian or a qualified witness to verify authenticity. Rambus, Inc. v. Infineon Tech. AG, 348 F.Supp.2d 698, 701 (E.D.Va.2004); see Fed. R.Evid. 902(11). There exists no such declaration with respect to Exhibits 3 and 4.

pret the term "qualified witness" broadly, requiring only someone familiar with the creation and maintenance of the records. *Sofidiya,* 1998 WL 743597, at *3; *United States v. Hernandez,* Nos. 98–4378, 98–4388, 1998 WL 841504, at *3 (4th Cir. Dec. 7, 1998); *Rambus,* 348 F.Supp.2d at 702–03. An "otherwise qualified witness" may lay the foundation for records' introduction despite lacking personal knowledge of the preparation of the records, but he or she must be familiar with the creation and record keeping procedures of the organization in order to establish the records' trustworthiness. *United States v. Jenkins,* 345 F.3d 928, 935–36 (6th Cir.2003) (*citing Dyno Constr. Co. v. McWane, Inc.,* 198 F.3d 567, 575–76 (6th Cir.1999)); *Hernandez,* 1998 WL 841504, at *2; *United States v. Porter,* 821 F.2d 968, 977 (4th Cir.1987) (finding that a security guard who merely had access to company files but did not know how the records were created or the record keeping requirements of the company was not a custodian or an "otherwise qualified witness").

The United States failed to lay the foundation sufficient to render Officer Michaels an "otherwise qualified witness." Officer Michaels testified that in May and November, the military police send their tuning forks to an outside agency for verification of accuracy, and that the agency then sends the military police a certificate, which Sgt. Johnson keeps on file. Officer Michaels offered no other testimony regarding the creation or maintenance of these certificates. He did not testify, as required by Rule 803(6), that the agency created the certificates contemporaneously with testing. Nor did he testify that the certificates were made by a person with knowledge at the time of testing, which Rule 803(6) also requires. In fact, Officer Michaels testified that he did not know who calibrated the tuning forks or by what method the agency calibrated the tuning

forks. His generalized testimony does not establish that Officer Michaels is familiar with the military police force's creation and maintenance of the certificates. *See In re Denslow,* 104 B.R. 761, 764–65 (E.D.Va.1989) (holding that copies of computer-generated ATM statements were admissible under 803(6) because bank employees were persons with knowledge, the documents were prepared contemporaneously with the actions, and the bank relied on the records in the regular course of business). Therefore, because the United States failed to lay a proper foundation for the admission of Exhibits 3 and 4, this evidence will be excluded.

### IV. Conclusion

For the foregoing reasons, the Court holds that Exhibits 1 and 2, the certified certificates of accuracy of the tuning forks introduced to support the United States's evidence that Defendant was speeding, constitute admissible evidence. Exhibits 3 and 4 constitute inadmissible evidence.