The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Lessell Henry MOORE, Defendant–Appellant.

No. 08CA1805.

Colorado Court of Appeals, Div. IV.

Dec. 9, 2010.

Rehearing Denied Feb. 3, 2011.

**512**

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler & Whitson, P.C., Eric A. Samler, Hollis A. Whitson, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Lessell Henry Moore, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted first degree murder, two counts of first degree burglary, first degree assault, sexual assault, menacing, and violation of a protection order. He was adjudicated as a habitual offender. We vacate his sentence for first degree burglary-assault/menace, and otherwise affirm the judgment and sentences.

## I. The Defective *Curtis* Advisement Was Not Plain Error

■ Defendant first contends the trial court gave him a defective *Curtis* advisement, and therefore his waiver of the right to testify was not knowing and voluntary. We conclude that even if the advisement was defective, the error was not plain. *Cf. People v. Wylie*, 260 P.3d 57, 59–61 (Colo.App.2010) (reviewing predicate statute de novo but applying plain error review to unpreserved sentencing issue).

A split exists among divisions of this court on limiting review of a *Curtis* issue to postconviction proceedings. *Compare People v. O'Hara*, 240 P.3d 283 (Colo.App.2010) (*People v. Blehm*, 983 P.2d 779, 797 (Colo.1999), holds that an invalid waiver "may be addressed only in post-conviction proceedings"), *with People v. Gomez*, 211 P.3d 53, 55 (Colo. App.2008) (taking up waiver issue "based on judicial economy"). Here, the Attorney General did not cite *Blehm* and argued that "a remand is unnecessary because this Court can conclude from the existing record that the trial court's advisement ... did not affect the defendant's decision to waive his right to testify." For this reason, as well as because *Blehm* did not cast the procedural issue as jurisdictional and we can resolve waiver without the fact-specific inquiry contemplated in *Blehm*, we follow *Gomez*.

■ *People v. Curtis*, 681 P.2d 504 (Colo.1984), addressed the advisement that a trial court must give before a criminal defendant decides whether to testify. The trial court need not follow the *Curtis* language exactly. *People v. Chavez*, 853 P.2d 1149, 1152 (Colo.1993). But if the court expands on that wording, the additional information must be correct. *See People v. Raehal*, 971 P.2d 256, 260 (Colo.App.1998). A defendant's waiver of the right to testify based on an incorrect advisement may not be knowing and voluntary. *Chavez*, 853 P.2d at 1152. The adequacy of a *Curtis* advisement is a legal question that we review de novo. *People v. Harding*, 104 P.3d 881, 885 (Colo.2005).

Here, during the *Curtis* advisement, the trial court told defendant, "[T]he Prosecutor may ask you what [your] prior felony conviction or convictions were for" and "whether

the convictions were by a guilty plea, or whether you actually went to trial, and were found guilty at the trial." Defense counsel did not object to the advisement, and defendant chose not to testify.

Nevertheless, defendant now asserts that under *Gomez,* decided after his trial, the advisement was defective as a matter of law. *Gomez* held that "in cross-examining a defendant, the prosecutor may not ask whether a prior felony conviction arose from a plea or a trial," and that a *Curtis* advisement to the contrary is erroneous. 211 P.3d at 57.

■ The Attorney General responds that *Gomez* was wrongly decided and we should not follow it, but cites no more recent contrary authority. One division of this court is not bound by the decision of another division. *See People v. Thomas,* 195 P.3d 1162, 1164 (Colo.App.2008). However, because we conclude that the error, if any, was not plain, we need not accept the invitation to revisit *Gomez.*

The Attorney General next asserts that even if the advisement was erroneous, defendant's failure to object requires us to apply the plain error standard in deciding whether this error entitles him to relief. We agree. *See, e.g., People v. Cook,* 197 P.3d 269, 275 (Colo.App.2008) (lack of contemporaneous objection triggers plain error review).

■ Reversal for plain error is a "drastic remedy." *Domingo–Gomez v. People,* 125 P.3d 1043, 1055 (Colo.2005). Even where a reviewing court detects error, two questions must be answered in the affirmative before it grants relief: whether the error was "plain," "clear," or "obvious"; and, if so, whether it "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005) (internal quotation marks and citations omitted).

■ Both questions recognize the import of the contemporaneous objection rule "to conserve judicial resources by alerting the trial court to a particular issue in order to give the court an opportunity to correct any error." *People v. Pahl,* 169 P.3d 169, 183 (Colo.App.2006). Requiring such an ob-

jection before considering error on appeal ensures that defendants do not end up "gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by objection at trial." *People v. Petschow,* 119 P.3d 495, 505 (Colo.App.2004) (quotation marks and citation omitted). Hence, "[p]lain error is error that is so clear-cut, so obvious, that a competent trial judge should be able to avoid it without benefit of objection." *People v. Beïlke,* 232 P.3d 146, 152 (Colo.App. 2009).

Here, defendant asserts that whether the *Curtis* error was plain or obvious should be measured by *Gomez.* However, his reliance on *People v. Versteeg,* 165 P.3d 760, 767 (Colo.App.2006), quoting *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), for the proposition that, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration," is misplaced. In contrast, *Gomez* makes clear that Colorado law was unsettled as to a prosecutor's ability to cross-examine a defendant on whether a prior felony conviction was the result of a plea or a trial. 211 P.3d at 56. In his reply brief, defendant agrees. This issue does not involve an overarching constitutional principle whose application in Colorado was predetermined by federal precedent.

■ If the law is unsettled at the time of trial, "plain error analysis will be conducted using the status of the law at the time of trial." *People v. O'Connell,* 134 P.3d 460, 464–65 (Colo.App.2005). Thus, "[w]hen the state of the law is unclear at trial and only becomes clear as a result of later authority, the district court's error is perforce not plain." *United States v. Turman,* 122 F.3d 1167, 1170 (9th Cir.1997). This result reflects the particular value of a contemporaneous objection to assist the trial court in dealing with unsettled law. *Id.*

Therefore, because the law was unsettled at the time of defendant's trial, we conclude that the unpreserved error in the *Curtis* advisement, if any, was not plain or obvious.

*Cf. People v. Valencia*, 169 P.3d 212, 221 (Colo.App.2007) (error not obvious absent "case interpreting, or providing an analytical model how to apply" statutory language), *abrogated in part on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

Having so concluded, we do not reach the second question whether the alleged error casts serious doubt on the reliability of the judgment of conviction. *See People v. Griffin*, 224 P.3d 292, 299 (Colo.App.2009) (citing with approval *State v. Barnes*, 94 Ohio St.3d 21, 759 N.E.2d 1240, 1248 (2002) (if alleged error is not plain, appellate court need not consider whether it affected defendant's substantial rights)); *see also United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (addressing whether error is plain before determining its effect on defendant's rights).

Accordingly, the *Curtis* advisement does not entitle defendant to any relief.

## II. The Trial Court Did Not Abuse Its Discretion in Declining to Excuse a Juror

■ Defendant next contends the trial court erred by denying his motion to excuse juror S, because during trial she had been exposed to a newspaper article containing prejudicial information about him. We discern no abuse of discretion.

Defendant first argues that juror S violated the court's sequestration order, which requires automatic reversal. Even assuming that she did, defendant cites no case, nor have we found one in Colorado, holding that reversal would be automatic. *Cf. People v. Sherman*, 45 P.3d 774, 780 (Colo.App.2001) (although defendant argued for new trial because of violation of a sequestration order, court held that to warrant reversal, defendant must show that juror heard or saw extraneous information and that the information was prejudicial).

Defendant next argues that the trial court abused its discretion by denying his motion to excuse juror S because of prejudicial information in the article. We disagree.

■ A trial court should deal with juror exposure to prejudicial publicity during trial as follows:

1) the trial court must determine whether the publicity is inherently prejudicial;

2) if so, the court should canvass the jury to determine whether the jury learned of the prejudicial publicity; and

3) the trial court should individually examine exposed jurors to determine how much they know of the publicity and what effect, if any, the publicity will have on their deliberations.

*Dunlap v. People*, 173 P.3d 1054, 1091 (Colo. 2007). Defendant's reliance on *People v. Harlan*, 109 P.3d 616 (Colo.2005); *People v. Wadle*, 97 P.3d 932 (Colo.2004); and *Wiser v. People*, 732 P.2d 1139 (Colo.1987), is misplaced. These cases involve exposure to extraneous information during deliberations, and CRE 606(b) precludes inquiry into the deliberative process.

Here, the article contained prejudicial information because defendant's extensive criminal history could not have been offered directly into evidence. *See People v. Moore*, 701 P.2d 1249, 1252–53 (Colo.App.1985). After the article had come to the trial court's attention, the court asked the jurors if any of them had been exposed to it. When juror S and three others indicated that they had, the court examined each one separately.

In response to the court's questions, juror S said that: her husband read the article to her while she was in another room; she did not pay much attention to him; she did not remember anything from the article about defendant; and she could remain fair and impartial. The court declined to excuse her, explaining that: "her husband was the one reading the article"; she "was not really paying attention to him" as he read it; and "she didn't know how to tell her husband to stop without telling him that was the case she was on." Because the record supports this decision, we decline to disturb it. *See People v. Muckle*, 107 P.3d 380, 383 (Colo. 2005) ("Under the abuse-of-discretion standard, an appellate court must affirm the trial court's decision if there is any evidence in the record to support the trial court's finding.").

Defendant's citation of *Moore*, 701 P.2d at 1253, for the proposition that a new trial was required, because the prior conviction information would have warranted reversal if offered directly into evidence, is misplaced. Here, the trial court accepted the juror's statement that although she recalled some information from the article, she did not remember any information concerning defendant. *Cf. People v. Mondragon*, 217 P.3d 936, 944 (Colo.App.2009) (trial court determines competency and credibility of jurors in ruling on challenge for cause).

Accordingly, we conclude that the court did not abuse its discretion in denying defendant's motion.

### III. Evidence of Defendant's Prior Convictions Did Not Violate His Confrontation Clause Rights

██ Defendant next contends the trial court violated his Sixth Amendment right to confront the witnesses against him by admitting pen packs and certificates of authenticity into evidence at his habitual offender trial. He relies on *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), in which the Supreme Court held that sworn certificates by state laboratory analysts attesting that the substance they analyzed was cocaine were testimonial, and therefore the defendant had a constitutional right to confront them at trial. Assuming, without deciding, that a confrontation clause challenge can be raised in a habitual proceeding, we discern no confrontation clause violation.[1]

██ An alleged confrontation clause violation "is subject to constitutional harmless error analysis if the error was properly preserved by objection at trial[,] and reversal is required unless the error was harmless beyond a reasonable doubt." *People v. Boykins*, 140 P.3d 87, 96 (Colo.App.2005). Defendant admits that he failed to object at

trial to admission of the pen packs and certificates on confrontation grounds. This failure limits review to plain error. *People v. Vigil*, 127 P.3d 916, 929 (Colo.2006); *People v. Gash*, 165 P.3d 779, 781 (Colo.App.2006).

However, defendant argues that because *Melendez–Diaz* announced a new rule of constitutional magnitude, we must review for constitutional harmless error despite his failure to preserve the issue below. *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), post-dates two of the cases on which defendant relies and undercuts his argument. Nevertheless, because we conclude that *Melendez–Diaz* did not adopt such a rule, we decline to decide whether Colorado would follow those states that have endorsed this view.[2]

In *Melendez–Diaz*, the certificates at issue were functionally equivalent to affidavits. The Court determined that the affidavits were "testimonial," and therefore implicated the defendant's Sixth Amendment right to confront witnesses against him. *See Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). It explained that they were made for the purpose of establishing some material fact at the defendant's trial and under circumstances which would lead a reasonably objective witness to believe that the statements they contained would be available for use at a later trial. *Melendez–Diaz*, 129 S.Ct. at 2531–32.

Defendant correctly notes that at the time of his trial, under the most recent Colorado case to have addressed the issue, admission of pen packs at a habitual criminal trial did not implicate confrontation clause rights. *See People v. Shreck*, 107 P.3d 1048, 1060–61 (Colo.App.2004). Nevertheless, *Melendez–Diaz* did not, as he contends, represent an unforeseeable doctrinal shift.

- The *Melendez–Diaz* Court stated that the case "involve[d] little more than the

---

1. *Compare People v. Lassek*, 122 P.3d 1029, 1031–32 (Colo.App.2005) (confrontation clause provides a trial right that does not apply at sentencing), *with Specht v. Patterson*, 386 U.S. 605, 609–10, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) (confrontation right applied when sentencing court made a new finding of fact to impose longer sentence).

2. *See, e.g., People v. Turner*, 50 Cal.3d 668, 268 Cal.Rptr. 706, 789 P.2d 887, 905 (1990); *People v. Rincon*, 129 Cal.App.4th 738, 28 Cal.Rptr.3d 844, 856 (2005); *State v. Carter*, 326 Mont. 427, 114 P.3d 1001, 1003–04 (2005); *Ex parte Turner*, 542 S.W.2d 187, 189 (Tex.Crim.App.1976).

application of [the] holding in *Crawford* ...," 129 S.Ct. at 2542, and was a "straightforward application" of it, *id.* at 2533.

- Before defendant's trial, the Colorado Supreme Court had reached the same conclusion with respect to laboratory reports identifying the nature of a tested substance, relying on *Crawford. Hinojos–Mendoza v. People*, 169 P.3d 662, 666–67 (Colo.2007).

- Although we have found no published decisions that have done so, several unpublished decisions have denied *Melendez–Diaz* retroactive effect on collateral review, stating it is not a "watershed" rule that implicates the fundamental fairness and accuracy of criminal proceedings.[3]

Hence, defendant cannot escape plain error review by relying on *Melendez–Diaz*. We begin that review by looking for error, and for two reasons, find none.

First, unlike the reports at issue in *Melendez–Diaz* and *Hinojos–Mendoza,* here the documents in the pen packs were prison and court records relating to defendant's prior convictions. They included registers of action, charging documents, and mittimuses from the other cases, as well as photographs and fingerprint sheets prepared and kept by law enforcement agencies in connection with those cases. These documents were created before defendant's habitual offender trial, and not for the purpose of establishing a material fact in any criminal proceeding. Rather, they were created for routine administrative purposes. Therefore, they were not testimonial and did not trigger defendant's right to confrontation. *See Melendez–Diaz,* 129 S.Ct. at 2539–40 ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because— having been created for the administration of an entity's affairs and not for the purpose of

establishing or proving some fact at trial— they are not testimonial."); *accord People v. Espinoza,* 195 P.3d 1122, 1126–27 (Colo.App. 2008) (proofs of service contained in the defendant's driving record were administrative documents and were not testimonial); *see also State v. Bennett,* 216 Ariz. 15, 162 P.3d 654, 657 (Ariz.Ct.App.2007) (documents proving the defendant's prior convictions were not testimonial); *Commonwealth v. McMullin,* 76 Mass.App.Ct. 904, 923 N.E.2d 1062, 1063–64 (2010) (certified copies of records from district court and registry of motor vehicles were not testimonial).

Second, unlike the documents at issue in *Melendez–Diaz* and *Hinojos–Mendoza,* the certificates here only authenticated the documents contained in the pen packs. Defendant's assertion, for which he fails to cite supporting authority, that the certificates should be analyzed differently because they cumulated several documents, does not change the nature of the documents being authenticated. Thus, the certificates were not testimonial. *Melendez–Diaz,* 129 S.Ct. at 2539 ("A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not ... *create* a record for the sole purpose of providing evidence against a defendant.") (emphasis in original); *id.* at 2532 n. 1 (noting that not everyone whose testimony is used to establish authenticity must appear in person at trial); *accord Bennett,* 162 P.3d at 656–57 (affidavit authenticating a police record was not testimonial); *see also United States v. Bacas,* 662 F.Supp.2d 481, 484 (E.D.Va.2009) (certificates of accuracy regarding testing equipment were not testimonial); *State v. Murphy,* 991 A.2d 35, 41–42 (Me.2010) (certificate from secretary of state regarding notice sent to defendant about his license was not testimonial).

Therefore, we join other courts that have addressed the issue since *Melendez–Diaz* and held that because pen packs and other

---

**3.** *E.g., Vega v. Walsh,* No. 06–CV–6492, 2010 WL 1685819, at *9–11 (E.D.N.Y. Apr. 22, 2010); *Silva v. Warden,* No. 09–CV–388–JD, 2010 WL 987026, at *2 (D.N.H. Mar.17, 2010); *Newsome v. Superintendent,* No. 3:09 CV 92 JM, 2010 WL 597943, at *3 (N.D.Ind. Feb.17, 2010); *Brewster v. People,* 08–CV–4480, 2010 WL 317919, at *6 n.

3 (E.D.N.Y. Jan.21, 2010); *Louder v. Coleman,* No. 09–1124, 2009 WL 4893193, at *1 (W.D.Pa. Dec.10, 2009); *cf. Wallace v. State,* 2010 Ark. App. 706, 378 S.W.3d 269 (Ark.Ct.App.2010) (noting that *"Melendez–Diaz* did not expand the previous holding in *Crawford* ").

"certified records of convictions" are not testimonial, their admission does not violate a defendant's confrontation clause rights. *See, e.g., Commonwealth v. Weeks,* 77 Mass.App. Ct. 1, 927 N.E.2d 1023, 1027–28 & n. 4 (Mass. App.Ct.2010) (collecting cases).

Accordingly, we conclude that the court did not err in admitting pen packs and authenticating certificates without affording defendant an opportunity to confront the persons who prepared them.

### IV. Only Defendant's Sentence for First Degree Burglary–Assault/Menace was Erroneous

Finally, defendant contends several errors require reversal of his sentences. We agree with him in part, and remand for the trial court to vacate his first degree burglary-assault/menace conviction. In all other respects, we affirm his sentences.

 Defendant contends, the Attorney General concedes, and we agree that one of defendant's first degree burglary convictions was entered erroneously. Defendant was convicted of first degree burglary under section 18–4–202(1), C.R.S.2010, which prohibits "assault[ing] or menac[ing]" someone during a burglary or being armed with an "explosive[ ] or a deadly weapon" during its commission. He was sentenced, on separate counts, for first degree burglary-assault/menace and for first degree burglary-deadly weapon. This was error because, while "the General Assembly may proscribe alternative means of committing the same offense," a court may not "impos[e] multiple punishments for each prohibited method a defendant uses" if he uses "more than one of the proscribed methods ... to accomplish the offense." *Woellhaf v. People,* 105 P.3d 209, 218 (Colo.2005).

To maximize the jury's verdict, we remand the case to the trial court to vacate defendant's first degree burglary-assault/menace conviction. *See, e.g., People v. Glover,* 893 P.2d 1311, 1315 (Colo.1995). Doing so moots defendant's argument that his convictions for first degree assault and for menacing must be vacated because they are lesser included offenses of first degree burglary-assault/menace.

 Defendant further asserts that the sentences for his first degree burglary conviction and his attempted first degree murder conviction must run concurrently. We disagree.

 Section 18–1–408(3), C.R.S.2010, states in relevant part: "When two or more offenses ... are supported by identical evidence ... [and] more than one guilty verdict is returned ... the sentences imposed shall run concurrently." "[T]he test for identical evidence is an evidentiary test rather than an elemental test." *Juhl v. People,* 172 P.3d 896, 902 (Colo.2007). If the acts that form the basis of the two charges are sufficiently distinct, the convictions are not supported by identical evidence. *Id.*

Here, the evidence supporting the charges involves different acts. Defendant's first degree burglary conviction is supported by evidence that he broke into the victim's house armed with a deadly weapon. Evidence that he stabbed the victim supported the attempted first degree murder conviction. This case is unlike *Juhl,* where the court noted, "the act that was the basis of [defendant's] first degree assault conviction cannot be logically separated from the act that formed the basis of the vehicular assault conviction." *Id.* Therefore, the trial court did not err in imposing consecutive sentences. *See, e.g., Muckle,* 107 P.3d 380 (evidence supporting heat-of-passion manslaughter and first degree assault convictions not identical where two shots fired at different times).

Accordingly, we conclude that only defendant's sentence for first degree burglary-assault/menace was erroneous, and we vacate that sentence.

### V. Conclusion

The case is remanded to the trial court with directions to correct the mittimus concerning defendant's first degree burglary-assault/menace conviction. In all other respects, the judgment and sentences are affirmed.

**518**

Judge MILLER concurs.

Judge BOORAS specially concurs.

JUDGE BOORAS specially concurring.

I concur in the result reached by the majority in this case. However, although the Attorney General does not argue that the *Curtis* advisement should not be addressed on direct appeal, I would decline to address the validity of the *Curtis* advisement here because doing so is contrary to the procedure adopted by our supreme court in *People v. Blehm*, 983 P.2d 779 (Colo.1999).

The *Curtis* advisement is a procedural safeguard designed to preserve a defendant's right to testify and to ensure that any waiver of that right is voluntary, knowing, and intelligent. *Blehm*, 983 P.2d at 786. As such, the advisement is simply a means to an end, and a defendant's waiver of the right to testify could be in fact valid even where the *Curtis* advisement is defective. *Id.* at 792 (concluding that a defendant who alleges in a post-conviction motion that his waiver was invalid due to a deficient advisement is entitled to an evidentiary hearing to determine whether the waiver was in fact voluntary, knowing, and intelligent). To ascertain the validity of the waiver, it may be necessary to consider evidence not present in the original trial record. *Id.* Thus, the supreme court held that claims of an invalid waiver of the right to testify "may be addressed only in post-conviction proceedings." *Id.* at 797.

Here, it is undisputed that the trial court's *Curtis* advisement contained the essential elements identified in *Blehm*.[4] However, defendant urges that the advisement was misleading to the extent that the court also informed him that the prosecutor could ask whether his prior felony convictions were obtained by a guilty plea or by a trial. Even assuming that this additional language incorrectly stated the law, the record on appeal does not reflect what effect, if any, that language had on defendant's choice not to testify. *See People v. Brewer*, 720 P.2d 596,

597 (Colo.App.1985) ("Since an accused's decision not to testify seldom turns on a single factor, we cannot assume that the adverse ruling [that a prior conviction could be used for impeachment] motivated defendant's decision not to testify.") (citing *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).

The *Blehm* requirement that a *Curtis* claim must be raised in a post-conviction proceeding remedies the failure of most trial records to adequately address the validity of a defendant's waiver. Accordingly, defendant's *Curtis* claim should not be addressed here. *See People v. Gibson*, 203 P.3d 571, 574 (Colo.App.2008) (holding that direct appeal is improper means to assert claim that additional instructions in *Curtis* advisement misled defendant and prompted his decision not to testify).

---

4. Under *Blehm*, an advisement concerning a defendant's right to testify must inform the defendant (1) that the right to testify exists; (2) that it is a personal right; (3) that if the defendant testifies, he or she will be subject to cross-examination; (4) that felony convictions may be disclosed; and (5) that those convictions can be used to impeach credibility. *Blehm*, 983 P.2d at 793.